**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ESTHER BROWNLEE and JACKIE TATE, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | Judge: |
| | ) | Magistrate Judge: |
| | ) | |
| CATHOLIC CHARITIES OF THE | ) | **JURY DEMANDED** |
| ARCHDIOCESE OF CHICAGO | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

<u>**COMPLAINT**</u>

NOW COME Plaintiffs, ESTHER BROWNLEE ("Brownlee") and JACKIE TATE ("Tate"), collectively ("Plaintiffs"), by and through their undersigned attorneys, and for their Complaint at Law against the Defendant, CATHOLIC CHARITIES OF THE ARCHDIOCESE OF CHICAGO ("Defendant"), state as follows:

<u>**NATURE OF THE CASE**</u>

1.    That Counts I, II, III, IV, V and VI are brought against Defendant under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. section 2000 *et seq.*, as amended.

2.    That Counts VII and VIII are brought against Defendant pursuant to the Illinois common law.

1

## JURISDICTION AND VENUE

3.     That this Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000 *et seq.*,

        as amended, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

4.     That venue in the Northern District of Illinois, Eastern Division is proper as the

        claim for relief arose in this State as required by 42 U.S.C. § 2000 *et seq.*

5.     That all conditions precedent have been fulfilled by Brownlee, including the filing

        of a Charge of Discrimination with the Equal Employment Opportunity Commission

        ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter

        from the EEOC. *See* Exhibit A.

6.     That all conditions precedent have been fulfilled by Tate, including the filing of a

        Charge of Discrimination with the EEOC of the United States Government, and a

        receipt of a Right-to-Sue Letter from the EEOC. *See* Exhibit B.


## PARTIES

7.     That Plaintiffs incorporate the preceding paragraphs by reference herein.

8.     That Brownlee is female and a resident of Illinois.

9.     That Tate is a female and a resident of Illinois.

10.    That Defendant is duly registered to conduct business in the state of Illinois.

11.    That at all times pertinent herein, Defendant has engaged in an industry affecting

        commerce and has had fifteen (15) or more employees for each working day in each

        of the twenty (20) or more calendar weeks in the current or preceding calendar year.

12.    That at all times pertinent herein, Brownlee was employed by Defendant.

13.    That at all times pertinent herein, Tate was employed by Defendant.

## GENERAL ALLEGATIONS

14.    That Plaintiff incorporates the preceding paragraphs by reference herein.

15.    That Brownlee's sex is female.

16.    That Tate's sex is female

17.    That Brownlee began her employment with Defendant in or about September 2012 as a Mobile Outreach Worker.

18.    That Tate began her employment with Defendant in or about October 2012 as a Mobile Outreach Worker.

19.    That throughout her employment with Defendant beginning in September 2012, Brownlee performed her assigned duties in a satisfactory manner, consistent with Defendant's standards, and her job performance met Defendant's legitimate expectations.

20.    That throughout her employment with Defendant beginning in October 2012, Tate performed her assigned duties in a satisfactory manner, consistent with Defendant's standards, and her job performance met Defendant's legitimate expectations.

21.    That as a Mobile Outreach Worker, Brownlee was required to drive with a partner to deliver meals and services to the people in the community.

22.    That from approximately May 18, 2015 to June 18, 2015, Brownlee was assigned to be partners with Dwayne Washington ("Washington"), a Mobile Outreach Worker.

23.    That as a Mobile Outreach Worker, Tate was required to drive with a partner to deliver meals and services to the people in the community.

3

24. That from approximately October 2012 to October 2014, Tate was assigned to be partners with Washington.

## COUNT I
## COMPLAINT OF ESTHER BROWNLEE FOR SEXUAL HARASSMENT AGAINST DEFENDANT

25. That Brownlee incorporates the preceding paragraphs by reference herein.

26. That beginning on approximately May 18, 2015, Brownlee was subjected to debilitating sexual harassment, offensive touching, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

27. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Brownlee was subjected to sexual harassment by her coworker, Dwayne Washington, a Mobile Outreach Worker.

28. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Washington made sexual comments to Brownlee on a daily basis.

29. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "You look good" on more than one occasion.

30. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "You know Ray like you" on more than one occasion.

31. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "You know Ray wants to fuck you" on more than one occasion.

4

32. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "I know Ray would like to fuck you" on more than one occasion.

33. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "I know what a man would do to a woman like you" on more than one occasion.

34. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Washington made sexist comments to Brownlee.

35. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "If I was your man, you wouldn't talk the way you talk."

36. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "If I was your man, you wouldn't talk unless I told you to."

37. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "If I was your man you wouldn't speak, unless you're spoken to."

38. That during the period from approximately May 18, 2015 to June 16, 2015, Washington rubbed Brownlee's shoulders and thighs on at least five occasions.

39. That each time Washington rubbed her shoulders or thighs, Brownlee pushed Washington's hand away and asked him to stop.

40.     That sometime between May 18, 2015 and June 16, 2015, Brownlee complained to her supervisor, Ray Lee ("Lee"), Coordinator, about Washington's offensive touching.

41.     That sometime between May 18, 2015 and June 16, 2015, Brownlee told Lee that she no longer wanted to work with Washington due to his offensive conduct.

42.     That in response to Brownlee's complaints, Lee stated "we put you with him because you can handle him."

43.     That after Brownlee complained to Lee about Washington's conduct, Brownlee was not immediately reassigned to work with another Mobile Outreach Worker.

44.     That Washington had not been adequately disciplined for his offensive conduct, including offensive touching of Brownlee, while he remained employed by Defendant.

45.     That Defendant failed to respond to and/or investigate Washington's conduct.

46.     That Brownlee found the sexual harassment exhibited by Washington towards her to be offensive.

47.     That Brownlee found Washington's conduct and comments unwelcomed, unwanted, and offensive.

48.     That the sexual harassment Brownlee was subjected to by the hands of Washington was severe, persistent in nature, unwelcomed, extremely offensive, humiliating, and effective in creating a hostile work environment for Brownlee that substantially interfered with Brownlee's ability to perform her job.

49.     That said continuous and persistent sexual harassment adversely affected the terms and conditions of Brownlee's employment with Defendant.

6

50.     That Defendant violated Brownlee's civil rights by subjecting her to harassment because of her sex, female, in violation of Title VII Section 2000e of the Act.


**PRAYER FOR RELIEF**

WHEREFORE, Brownlee hereby requests that this Court provide the following equitable and legal remedies for relief:

>a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

>b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

>c. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

>d. Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

>e. Award Plaintiff prejudgment interest.

>f. Grant judgment against Defendant for punitive damages, as permitted by law, for willful and wanton conduct.

>g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's companies.

>h. Grant such other and further relief as this Court deems just and proper.


**COUNT II**
**COMPLAINT OF JACKIE TATE FOR SEXUAL HARASSMENT AGAINST DEFENDANT**

51.     That Tate incorporates the preceding paragraphs by reference herein.

52. That beginning on approximately October 2012, Tate was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

53. That beginning on approximately October 2012 and continuing through October 2014, Tate was subjected to sexual harassment by her coworker, Dwayne Washington, a Mobile Outreach Worker.

54. That beginning on approximately October 2012 and continuing through October 2014, Washington made sexual comments to Tate on a daily basis.

55. That during the period from approximately October 2012 to October 2014, Washington stated to Tate "I wish I was your jeans because I would be all up in that" on at least two occasions.

56. That during the period from approximately October 2012 to October 2014, Washington referred to Tate as a prostitute after referring to himself as a pimp by stating that he used to be a "man about town."

57. That during the period from approximately October 2012 to October 2014, Washington stated to Tate "I like the way your ass is shaped" in presence of another female employee.

58. That during the period from approximately October 2012 to October 2014, Tate overheard Washington discussing engaging in sexual conduct with another female employee by stating that he would "bend her over a box."

59. That during the period from approximately October 2012 to October 2014, Tate overheard Washington make homophobic comments on more than one occasion.

8

60.   That during the period from approximately October 2012 to October 2014, Tate reported Washington's offensive conduct to her supervisors, Renee Rouse ("Rouse"), an Assistant Director, Ray Lee, a Coordinator, and Samara LNU ("Samara"), a Coordinator, on more than one occasion.

61.   That Washington had not been adequately disciplined for his offensive conduct while he remained employed by Defendant, despite multiple complaints made by Tate to her supervisors.

62.   That Defendant failed to respond to and/or investigate Washington's offensive comments.

63.   That in approximately Fall or Winter of 2013, Washington showed Tate a pornographic video of a woman performing oral sex, while in the lounge area at Defendant.

64.   That Tate found the pornographic video to be offensive.

65.   That immediately after viewing the pornographic video, Tate complained to Lee about Washington's conduct.

66.   That in response to Tate's complaint, Lee stated "you know how he is."

67.   That Lee failed to respond to and/or investigate Washington's offensive conduct.

68.   That Defendant failed to respond to and/or investigate Washington's offensive conduct.

69.   That Tate found the sexual harassment exhibited by Washington towards her to be offensive.

70.   That Tate found Washington's conduct and comments unwelcomed, unwanted, and offensive.

71.     That the sexual harassment Tate was subjected to by the hands of Washington was severe, persistent in nature, unwelcomed, extremely offensive, humiliating, and effective in creating a hostile work environment for Tate that substantially interfered with Tate's ability to perform her job.

72.     That said continuous and persistent sexual harassment adversely affected the terms and conditions of Tate's employment with Defendant.

73.     That Defendant violated Tate's civil rights by subjecting her to harassment because of her sex, female, in violation of Title VII Section 2000e of the Act.


**PRAYER FOR RELIEF**

WHEREFORE, Tate hereby requests that this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendant for reinstatement, front pay, back pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendant for punitive damages, as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination and sexual harassment from Defendant's companies.

h. Grant such other and further relief as this Court deems just and proper.

## COUNT III
## COMPLAINT OF ESTHER BROWNLEE FOR SEX DISCRIMINATION AGAINST DEFENDANT

74. That Brownlee incorporates the preceding paragraphs by reference herein.

75. That beginning on approximately May 18, 2015, Brownlee was subjected to debilitating sexual harassment, offensive touching, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

76. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Brownlee was subjected to sexual harassment by her coworker, Dwayne Washington, a Mobile Outreach Worker.

77. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Washington made sexual comments to Brownlee on a daily basis.

78. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "You look good" on more than one occasion.

79. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "You know Ray like you" on more than one occasion.

80. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "You know Ray want to fuck you" on more than one occasion.

81. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "I know Ray would like to fuck you" on more than one occasion.

11

82. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "I know what a man would do to a woman like you" on more than one occasion.

83. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Washington made sexist comments to Brownlee.

84. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "If I was your man, you wouldn't talk the way you talk."

85. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "If I was your man, you wouldn't talk unless I told you to."

86. That during the period from approximately May 18, 2015 to June 16, 2015, Washington stated to Brownlee "If I was your man you wouldn't speak, unless you're spoken to."

87. That during the period from approximately May 18, 2015 to June 16, 2015, Washington rubbed Brownlee's shoulders and thighs on at least five occasions.

88. That each time Washington rubbed her shoulders or thighs, Brownlee pushed Washington's hand away and asked him to stop.

89. That sometime between May 18, 2015 and June 16, 2015, Brownlee complained to her supervisor, Ray Lee, Coordinator, about Washington's offensive touching.

90. That sometime between May 18, 2015 and June 16, 2015, Brownlee told Lee that she no longer wanted to work with Washington due to his offensive conduct.

91.   That in response to Brownlee's complaints, Lee stated "we put you with him because you can handle him."

92.   That after Brownlee complained to Lee about Washington's conduct, Brownlee was not reassigned to work with another Defendant employee.

93.   That Defendant failed to respond to Washington's offensive conduct.

94.   That Washington had not been adequately disciplined for his offensive conduct, including offensive touching of Brownlee, while he remained employed by Defendant.

95.   That on or about June 16, 2015, while Washington and Brownlee were assigned to work together, Washington began to yell and curse at Brownlee in front of a client, who, as a result, refused to open the door and accept the meal delivered by Brownlee and Washington.

96.   That on or about June 16, 2015, Washington called Lee to report the occurrence.

97.   That on or about June 16, 2015, Lee ordered Brownlee and Washington to return to the office to discuss the occurrence with Lee.

98.   That on or about June 16, 2015, Washington struck Brownlee on the arm with the back of his hand while driving back to the office to meet Lee.

99.   That on or about June 16, 2015, Washington threatened Brownlee by stating "I'll have someone meet you at 10 S. Kedzie and hurt you."

100.  That on or about June 16, 2015, after arriving back at the office, Washington reported to Renee Rouse, the Assistant Director, to discuss Brownlee.

101. That on or about June 16, 2015, Rouse denied Brownlee access to the meeting between Washington and Rouse, in which Washington and Rouse discussed Brownlee.

102. That on or about June 16, 2015, after Washington met with Rouse, Brownlee and Washington met with Lee and Ian Stephens ("Stephens").

103. That on or about June 16, 2015, during a meeting with Lee and Stephens, Washington admitted to striking Brownlee.

104. That on or about June 16, 2015, during the meeting with Lee and Stephens, Lee stated to Brownlee and Washington "I can't have you two working together anymore."

105. That on or about June 16, 2015, Rouse told Brownlee that she cannot reassign Brownlee and Washington, despite Washington's conduct.

106. That on or about June 16, 2015, after a meeting with Lee and Stephens, Brownlee was asked to leave the meeting so that Washington could speak with Rouse and Stephens alone.

107. That on or about June 16, 2015, after the meeting with Lee and Stephens, Lee informed Brownlee that if she misses four more work days, she will receive a write up.

108. That on or about June 18, 2015, Brownlee called Cynthia Guerrero ("Guerrero") and reported that she was subjected to a hostile work environment at Defendant.

109. That on or about June 18, 2015, Rouse assigned Brownlee to work with Washington.

110. That on or about June 18, 2015, after conveying to Lee that Brownlee was afraid to work with Washington after he struck her and that she would file a police report if she has to work with him, Brownlee was assigned to work with another Mobile Outreach Worker.

111. That between June 19, 2015 and June 23, 2015, Brownlee was contacted by several employees of Defendant, who informed Brownlee that Lee instructed Washington to file a police report against Brownlee for threatening him.

112. That on or about June 23, 2015, Brownlee filed a police report against Washington and attempted to secure a restraining order against Washington.

113. That on or about June 25, 2015, Brownlee was asked to meet with Louis Barbosa ("Barbosa"), Director, at Defendant's downtown office.

114. That on or about June 25, 2015, Brownlee was terminated by Barbosa due to unprofessional behavior related to the June 16, 2015 incident between Brownlee and Washington.

115. That similarly situated, male employees were not subjected to inferior terms and conditions of employment.

116. That similarly situated, male employees were not subjected to harassment based on their sex.

117. That similarly situated, male employees were not terminated after engaging in the same conduct as Brownlee.

118. That Brownlee is entitled to be free from willful and wanton conduct.

119. That Defendant violated Brownlee's civil rights by discriminating against her because of her sex, female, in violation of Title VII Section 2000e of the Act.

## PRAYER FOR RELIEF

WHEREFORE, Brownlee hereby requests that this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination, sexual harassment and retaliation.

c. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d. Award Plaintiff a judgment against Defendant for reinstatement, back pay, front pay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendant for punitive damages, as permitted by law, for willful and wanton conduct.

g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination, sexual harassment and retaliation from Defendant's companies.

h. Grant such other and further relief as this Court deems just and proper.

## COUNT IV
## COMPLAINT OF JACKIE TATE FOR SEX DISCRIMINATION AGAINST DEFENDANT

120.    That Tate incorporates the preceding paragraphs by reference herein.

121.    That beginning on approximately October 2012, Tate was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

16

122. That beginning on approximately October 2012 and continuing through October 2014, Tate was subjected to sexual harassment by her coworker, Dwayne Washington, a Mobile Outreach Worker.

123. That beginning on approximately October 2012 and continuing through October 2014, Washington made sexual comments to Tate on a daily basis.

124. That during the period from approximately October 2012 to October 2014, Washington stated to Tate "I wish I was your jeans because I would be all up in that" on at least two occasions.

125. That during the period from approximately October 2012 to October 2014, Washington referred to Tate as a prostitute after referring to himself as a pimp by stating that he used to be a "man about town."

126. That during the period from approximately October 2012 to October 2014, Washington stated to Tate "I like the way your ass is shaped" in the presence of another female employee.

127. That during the period from approximately October 2012 to October 2014, Tate overheard Washington discussing engaging in sexual conduct with another female employee by stating that he would "bend her over a box."

128. That during the period from approximately October 2012 to October 2014, Tate overheard Washington make homophobic comments on more than one occasion.

129. That during the period from approximately October 2012 to October 2014, Tate reported Washington's offensive conduct to her supervisors, Renee Rouse, an Assistant Director, Ray Lee, a Coordinator, and Samara LNU, a Coordinator, on more than one occasion.

17

130. That Washington had not been adequately disciplined for his offensive conduct while he remained employed by Defendant, despite multiple complaints made by Tate to her supervisors.

131. That Defendant failed to respond to and/or investigate Washington's offensive comments.

132. That in approximately Fall or Winter of 2013, Washington showed Tate a pornographic video of a woman performing oral sex, while in the lounge area at Defendant.

133. That Tate found the pornographic video to be offensive.

134. That immediately after viewing the pornographic video, Tate complained to Lee about Washington's offensive conduct.

135. That in response to Tate's complaint, Lee stated "you know how he is."

136. That Lee failed to respond to and/or investigate Washington's offensive conduct.

137. That Defendant failed to respond to and/or investigate Washington's offensive conduct.

138. That Tate found the sexual harassment exhibited by Washington towards her to be offensive.

139. That Tate found Washington's conduct and comments unwelcomed, unwanted, and offensive.

140. That similarly situated, male employees were not subjected to inferior terms and conditions of employment.

141. That similarly situated, male employee were not subjected to harassment based on their sex.

18

142.    That Defendant violated Tate's civil rights by discriminating against her because of her sex, female, in violation of Title VII Section 2000e of the Act.

## PRAYER FOR RELIEF

WHEREFORE, Tate hereby requests that this Court provide the following equitable and legal remedies for relief:

    a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

    b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination, sexual harassment and retaliation.

    c. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    d. Award Plaintiff a judgment against Defendant for reinstatement, back pay, front pay and other compensatory damages.

    e. Award Plaintiff prejudgment interest.

    f. Grant judgment against Defendant for punitive damages, as permitted by law, for willful and wanton conduct.

    g. Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination, sexual harassment and retaliation from Defendant's companies.

    h. Grant such other and further relief as this Court deems just and proper.

## COUNT V
## COMPLAINT OF ESTHER BROWNLEE FOR RETALIATION AGAINST DEFENDANT

143.    That Brownlee incorporates the proceeding paragraphs by reference herein.

144. That beginning on approximately May 18, 2015, Brownlee was subjected to debilitating sexual harassment, offensive touching, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

145. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Brownlee was subjected to sexual harassment by her coworker, Dwayne Washington, a Mobile Outreach Worker.

146. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Washington made sexual comments to Brownlee on a daily basis.

147. That beginning on approximately May 18, 2015 and continuing through June 16, 2015, Washington made sexist comments to Brownlee.

148. That during the period from approximately May 18, 2015 to June 16, 2015, Washington rubbed Brownlee's shoulders and thighs on at least five occasions.

149. That each time Washington rubbed her shoulders or thighs, Brownlee pushed Washington's hand away and asked him to stop.

150. That sometime between May 18, 2015 and June 16, 2015, Brownlee complained to her supervisor, Ray Lee, about Washington's offensive touching.

151. That sometime between May 18, 2015 and June 16, 2015, Brownlee told Lee that she no longer wanted to work with Washington due to his offensive conduct.

152. That in response to Brownlee's complaints, Lee stated "we put you with him because you can handle him."

153. That after Brownlee complained to Lee about Washington's conduct, Brownlee was not reassigned to work with another Mobile Outreach Worker.

154. That Defendant failed to respond to Washington's offensive conduct.

155. That Washington had not been adequately disciplined for his offensive conduct, including offensive touching of Brownlee, while he remained employed by Defendant.

156. That on or about June 16, 2015, while Washington and Brownlee were assigned to work together, Washington began to yell and curse at Brownlee in front of a client, who, as a result, refused to open the door and accept the meal delivered by Brownlee and Washington.

157. That on or about June 16, 2015, Washington called Lee to report the occurrence.

158. That on or about June 16, 2015, Lee ordered Brownlee and Washington to return to the office to discuss the occurrence with Lee.

159. That on or about June 16, 2015, Washington struck Brownlee on the arm with the back of his hand while driving back to the office to meet Lee.

160. That on or about June 16, 2015, Washington threatened Brownlee by stating "I'll have someone meet you at 10 S. Kedzie and hurt you."

161. That on or about June 16, 2015, after arriving back at the office, Washington reported to Renee Rouse, an Assistant Director, to discuss Brownlee.

162. That on or about June 16, 2015, Rouse denied Brownlee access to the meeting between Washington and Rouse, in which Washington and Rouse discussed Brownlee.

163. That on or about June 16, 2015, after Washington met with Rouse, Brownlee and Washington met with Lee and Ian Stephens ("Stephens").

164. That on or about June 16, 2015, during a meeting with Lee and Stephens, Washington admitted to striking Brownlee.

165. That on or about June 16, 2015, during the meeting with Lee and Stephens, Lee stated to Brownlee and Washington "I can't have you two working together anymore."

166. That on or about June 16, 2015, Rouse told Brownlee that she cannot reassign Brownlee and Washington, despite Washington's offensive conduct.

167. That on or about June 16, 2015, after a meeting with Lee and Stephens, Brownlee was asked to leave the meeting so that Washington could speak with Rouse and Stephens alone.

168. That on or about June 16, 2015, after the meeting with Lee and Stephens, Lee informed Brownlee that if she misses four more work days, she will receive a write up.

169. That Lee informed Brownlee about the possibility of a write up within a short period of time of Brownlee's complaints and her opposition to the sexual harassment.

170. That on or about June 18, 2015, Brownlee called Cynthia Guerrero ("Guerrero") and reported that she was subjected to hostile work environment at Defendant.

171. That on or about June 18, 2015, Brownlee was assigned to work with Washington by Rouse.

172. That on or about June 18, 2015, after conveying to Lee that Brownlee was afraid to work with Washington after he struck her and that she would file a police report if she has to work with him, Brownlee was assigned to work with another employee.

22

173. That between June 19, 2015 and June 23, 2015, Brownlee was contacted by several employees of Defendant, who informed Brownlee that Lee instructed Washington to file a police report against Brownlee for threatening him.

174. That on or about June 23, 2015, Brownlee filed a police report against Washington and attempted to secure a restraining order against Washington. See Exhibit 3.

175. That on or about June 25, 2015, Brownlee was asked to meet with Louis Barbosa the Director, at Defendant's downtown office.

176. That on or about June 25, 15, Brownlee was terminated by Barbosa due to unprofessional behavior related to the June 16, 2015 incident between Washington and Brownlee.

177. That Brownlee's termination occurred within a short period of time of Brownlee's complaints and her opposition of sexual harassment.

178. That Defendant's conduct placed Brownlee in a position inferior to that of other similarly situated employees who did not oppose sexual harassment and did not complain of sex discrimination and sexual harassment.

179. That Defendant's conduct adversely affected the terms and conditions of Brownlee's employment with Defendant.

180. That these retaliatory acts and her opposition of sexual harassment and complaints of sexual harassment and sex discrimination occurred within a short period of time, thereby raising an inference of retaliatory motive.

181. That Plaintiff is entitled to be free from willful and wanton conduct.

182.    That Defendant's treatment of Brownlee was motivated by evil motive and intent, and was recklessly and callously indifferent to Brownlee's protected rights under the Title VII.

183.    That Defendant conduct amount to retaliation in violation of Section 2000e of the Act.

**PRAYER FOR RELIEF**

WHEREFORE, Brownlee hereby requests that this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of sexual discrimination and sexual harassment.

c. Award Plaintiff reinstatement, lost wages, including back pay, front pay and lost fringe benefits, and including, without limitation, any lost benefits with applicable prejudgment and statutory interest.

d. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

e. Award Plaintiff a judgment against Defendant for compensatory damages.

f. Grant judgment against Defendant for punitive damages for willful and wanton conduct.

g. Grant such other and further relief as this Court deems just and proper.

**COUNT VI**
**COMPLAINT OF JACKIE TATE FOR CONSTRUCTIVE DISCHARGE**
**AGAINST DEFENDANT**

184.    That Tate incorporates the preceding paragraphs by reference here.

24

185. That beginning on approximately October 2012, Tate was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

186. That beginning on approximately October 2012 and continuing through October 2014, Tate was subjected to sexual harassment by her coworker, Dwayne Washington, a Mobile Outreach Worker.

187. That beginning on approximately October 2012 and continuing through October 2014, Washington made sexual and homophobic comments to and around Tate on a daily basis.

188. That during the period from approximately October 2012 to October 2014, Tate reported Washington's offensive conduct to her supervisors, Renee Rouse, an Assistant Director, Ray Lee, a Coordinator, and Samara LNU, a Coordinator, on more than one occasion.

189. That Washington had not been adequately disciplined for his offensive conduct while he remained employed by Defendant, despite multiple complaints made by Tate to her supervisors.

190. That Defendant failed to respond to and/or investigate Washington's offensive conduct.

191. That in approximately Fall or Winter of 2013, Washington showed Tate a pornographic video of a woman performing oral sex, while in the lounge area at Defendant.

192. That Tate found the pornographic video to be offensive.

193. That immediately after viewing the pornographic video, Tate complained to Lee about Washington's offensive conduct.

194. That in response to Tate's complaint, Lee stated "you know how he is."

195. That Lee failed to respond to and/or investigate Washington's offensive conduct.

196. That Defendant failed to respond to and/or investigate Washington's offensive conduct.

197. That Tate found the sexual harassment and sex discrimination exhibited by Washington and Defendant towards her to be offensive.

198. That Tate found Washington's conduct and comments unwelcomed, unwanted, and offensive.

199. That the sexual harassment and sex discrimination Tate was subjected to by Washington and Defendant was severe, persistent in nature, unwelcomed, extremely offensive, humiliating, and effective in creating a hostile work environment for Tate that substantially interfered with Tate's ability to perform her job

200. That said continuous and persistent sexual harassment and sex discrimination adversely affected the terms and conditions of Tate's employment with Defendant.

201. That due to the ongoing and continuous nature of the sexual harassment and sex discrimination, Tate concluded that Defendant did not want her employed there, and thus, constructed a work environment so hostile and intolerable that no reasonable minded person could continue to work effectively within such an environment.

202.    That as a result of such a hostile and intolerable work environment created by
Defendant, Tate had no other alternative but to resign from Defendant on October
31, 2014.

## PRAYER FOR RELIEF

WHEREFORE, Tate hereby requests that this Court provide the following
equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest
practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of
sexual discrimination and sexual harassment.

c. Award Plaintiff reinstatement, lost wages, including back pay, front pay
and lost fringe benefits, and including, without limitation, any lost benefits
with applicable prejudgment and statutory interest.

d. Award Plaintiff costs of litigation, including reasonable attorneys' fees
and expert fees and expenses.

e. Award Plaintiff a judgment against Defendant for compensatory
damages.

f. Grant judgment against Defendant for punitive damages for willful and
wanton conduct.

g. Grant such other and further relief as this Court deems just and proper.

## COUNT VII
## COMPLAINT OF ESTHER BROWNLEE FOR BATTERY AGAINST
## DEFENDANT

203.    That Brownlee incorporates the proceeding paragraphs by reference herein.

27

204. That, while acting within the scope of his employment with Defendant, Dwayne Washington, a Mobile Outreach Worker, subjected Brownlee to a battery.

205. That Washington intended to engage in offensive and physical contact with Brownlee's body.

206. That Defendant failed to exercise reasonable care in the retention and supervision of its employees that resulted in Plaintiff being subjected to a battery.

207. That on approximately June 16, 2015, Washington stuck Brownlee on her arm with the back of his hand, while Washington and Brownlee were driving back to Defendant's office from a Mobile Outreach assignment.

208. That Washington's action was intentional and resulted in contact that was unwelcomed and offensive.

209. As a direct and proximate result of Defendants' conduct, Brownlee suffered and continues to suffer from depression, fright, physical illness, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Brownlee hereby requests that this Court provide the following equitable and legal remedies for relief:

> a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.
>
> b. Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.
>
> c. Award Plaintiff a judgment against Defendant for compensatory damages.

d. Grant judgment against Defendant for punitive damages for willful and wanton conduct.

e. Grant such other and further relief as this Court deems just and proper.

## COUNT VIII
## COMPLAINT OF ESTHER BROWNLEE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT

210. That Brownlee incorporates the preceding paragraphs by reference herein.

211. That while acting within the scope of his employment with Defendant, Dwayne Washington, a Mobile Outreach Worker, subjected Brownlee to sexual harassment and battery during her employment.

212. That Defendant, through the actions of Washington, intentionally inflicted severe emotional distress and mental anguish upon Brownlee.

213. That Defendant, through Washington, acted willfully and intentionally in that it was aware that Plaintiff would suffer, and in fact did suffer extreme emotional and physical distress as a result of Washington's extreme, oppressive, and unreasonable conduct.

214. That Washington's conduct amounts to intentional infliction of emotional distress because said conduct was extreme and outrageous beyond the bounds of moral decency such that no reasonable person could be expected to endure it.

215. As a result of Washington's conduct, Brownlee has suffered and continues to suffer severe emotional distress, fright, physical illness, mental anguish, humiliation, and embarrassment.

216.     That Defendant could have prevented the aforementioned extreme and outrageous
conduct Washington imposed upon Brownlee by taking reasonable care in
supervising or disciplining Washington.

217.     That as a direct and proximate result of Defendants' conduct, Brownlee suffered
and continues to suffer from severe emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Brownlee hereby requests that this Court provide the following
equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest
practicable date and cause this case to be expedited in every possible way.

b. Award Plaintiff costs of litigation, including reasonable attorneys' fees
and expert fees and expenses.

c. Award Plaintiff a judgment against Defendant for compensatory
damages.

d. Grant judgment against Defendant for punitive damages for willful
and wanton conduct.

e. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
Esther Brownlee and Jackie Tate,

_____
One of Plaintiffs' Attorneys

Uche O. Asonye – 6209522
Vaughn C. Ganiyu – 6303357
Asonye & Associates
100 North LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110

## JURY DEMAND

NOW COME Plaintiffs Esther Brownlee and Jackie Tate, by and through their undersigned attorneys, and hereby demand a trial by jury in the above-entitled cause of action.

Respectfully submitted,
Esther Brownlee and Jackie Tate,

_____
One of Plaintiffs' Attorneys

Uche O. Asonye – 6209522
Vaughn C. Ganiyu – 6303357
Asonye & Associates
100 North LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110

31