UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ESTHER BROWNLEE,                              )
                                             )
          Plaintiff and Counter-Defendant,    )
                                             )
and                                          )
                                             )
JACKIE TATE AND JOANIE FLEMING,               )
                                             )
          Plaintiffs,                         )
                                             )
          v.                                  )      No. 16-cv-665
                                             )
CATHOLIC CHARITIES OF THE                     )      Judge Gottschall
ARCHDIOCESE OF CHICAGO,                       )
                                             )
          Defendant,                          )
                                             )
and                                          )
                                             )
DWAYNE WASHINGTON,                            )
                                             )
          Defendant and Counter-Plaintiff.    )


**<u>Memorandum and Order</u>**


        Plaintiffs Esther Brownlee ("Brownlee"), Jackie Tate ("Tate"), and Joanie Fleming

("Fleming"), all women, worked for the Catholic Charities of the Archdiocese of Chicago

("Catholic Charities") as mobile outreach workers providing emergency services to homeless

and at-risk people in Chicago.  Their job duties included include delivering emergency food

boxes, conducting well-being checks, and transporting people to a shelter or hospital.  Pls.' Resp.

to SOF ¶ 2–3, ECF No. 97.[1]  Plaintiffs allege that they worked in a sexually charged, hostile work environment.  They sued Catholic charities and one of their male co-workers, Duane Washington ("Washington"), alleging claims under Illinois law and Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e *et seq.*  All plaintiffs bring Title VII "sexual harassment" and sex discrimination   claims; Brownlee and Fleming assert retaliation claims; and Tate pleads a Title VII constructive discharge claim.  Brownlee also brings claims for battery, for intentional infliction of emotional distress ("IIED"), and a claim under the Illinois Gender Violence Act (sometimes "IGVA"), 740 Ill. Comp. Stat. 82/1 *et seq.* (West 2020). Washington counterclaimed against Brownlee for battery.

Four motions for partial summary judgment are before the court.  Collectively, these motions seek dismissal of all pending claims and counterclaims.

## I.  Procedural Background

Plaintiff's First Amended Complaint ("FAC") named Catholic Charities as the sole defendant.  Catholic Charities moved to dismiss the FAC for failure to state a claim, and the motion was granted in part.  *Brownlee v. Catholic Charities of the Archdiocese of Chicago* ("Brownlee I"), 2017 WL 770997 (N.D. Ill. Feb. 28, 2017).  With leave of court, plaintiffs filed their Second Amended complaint, adding Washington as a defendant.  2d Am. Compl. ("SAC"), ECF No. 37.  Defendants again moved for partial dismissal of the SAC.   The court dismissed

---

[1] The parties filed consolidated Local Rule 56.1(a)(3) fact statements pertaining to all three of defendants' motions for summary judgment.  They are cited as: Defs.' SOF, ECF No. 79; Resp. to SOF, ECF No. 97; Pls.' SAF, ECF No. 98; Resp. to SAF, ECF No. 107.  Citations referring to the Local Rule 56.1 fact statements relating to Brownlee's motion for summary judgment use the following abbreviations: Brownlee SOF, ECF No. 90; Washington Resp. to Brownlee SOF, ECF No. 94; Washington SAF, ECF No. 95; Brownlee Resp. to Washington SAF, ECF No. 104.

count X against Catholic Charities (but not Washington). *Brownlee v. Catholic Charities of the Archdiocese of Chicago* ("Brownlee II"), 2018 WL 1519155, at *9–11, 13 (N.D. Ill. Mar. 28, 2018). Count X asserts a claim under the Illinois Gender Violence Act, 740 Ill. Comp. Stat. 82/10 (West 2020).

In his answer to the SAC, Washington asserted a counterclaim against Brownlee for battery. His claims arise out of the same incident as Brownlee's battery and IGVA claims.

## II. Summary Judgment Standard and Objections to Local Rule 56.1 Fact Statements

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to," and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party–but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for

summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted).

The pending motions sometimes raise overlapping issues. In particular, the events of June 16, 2015, are central to Brownlee's battery and IGVA claims as well as Washington's battery counterclaim. The court applies the procedural requirements of Rule 56 separately to each cross motion. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). Each movant and nonmovant "must individually satisfy the requirements of Rule 56." *United Transp. Union v. Ill. Cent. R.R. Co.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998) (citing *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Kelly*, 1996 WL 507258, *3 (N.D. Ill. Sept. 4, 1996)). Thus, which party must "go beyond the pleadings and affirmatively. . .establish a genuine issue of material fact" depends on which party will bear the burden of proof on an issue at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). This means that the court adopts "a dual, 'Janus-like' perspective" on cross motions aimed at the same claim or defense. *Hotel 71*, 778 F.3d at 603 (citing *Shiner v. Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014)). On one motion, the court views the facts and inferences in the light most favorable to the nonmovant; but if summary judgment is not warranted, the court changes tack on the cross motion and gives the unsuccessful movant "all of the favorable factual inferences that it has just given to the movant's

opponent." *Id.* (citing *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647–48 (7th Cir. 2003)).

**B. Objections and Arguments in Statements of Undisputed Material Facts**

Local Rule 56.1 creates a procedure for presenting material facts at summary judgment. Specifically, Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting L.R. 56.1(a)(3)). Each paragraph of the movant's facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a). The "[f]ailure to submit such a statement constitutes grounds for denial of the motion." *Id.* Local Rule 56.1(b)(3)(B) requires the nonmoving party to submit a response to each statement of fact provided by the movant, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Similarly, "[i]f additional material facts are submitted by the opposing party . . . the moving party may submit a concise reply in the form prescribed in that section for a response." L.R. 56.1(a). If the movant fails to respond properly to the opposing party's statement of additional facts, those facts will be deemed admitted. *Id.*

*1. Summary of Fact Statements*

The fact statements here are rife with legal argument and objections. Plaintiffs object that several paragraphs of defendants' SOF draw legal conclusions. Resp. to SOF ¶¶ 13, 21–24, 26, 40, 42, 48, 64, 90–94, 108, 128, 136. Plaintiffs also accuse defendants of drawing improper factual conclusions on "issues central to this litigation." *Id*. ¶¶ 15, 16, 17, 37. Plaintiffs also object that certain facts do not create a genuine dispute of material fact. *See id*. ¶ 56, 58, 85, 86. Finally, plaintiffs label several paragraphs of defendants' Local Rule 56.1(a)(3) statement of facts "vague," *id*. ¶ 39, 46, 64, 108, 112, 114, 115, 116, 120, 122, 146; "incorrect" or "inaccurate," *id*. ¶¶ 51, 113, 114, 139, 140, 142, 144, 145; and as "mischaracterize[ing]" or "misquote[ing]" the evidence. *Id*. ¶ 126, 127, 129, 138, 141.

Defendants likewise embed numerous legal arguments in their response to plaintiffs' Local Rule 56.1(b)(3) statement of additional facts. Certain paragraphs state a legal conclusion or are not supported by the record, according to defendants. *See* Resp. to SAF ¶¶ 7, 10, 11, 15, 16, 19, 21, 25, 38, 39, 40, 43, 44, 48–51, 65. Defendants also repeatedly contend that a declarant or deponent cited by plaintiffs "lacks personal knowledge" of a fact. *Id*. ¶¶ 29, 33, 36, 37. Finally, defendants argue that certain declarations and affidavits should be disregarded because they are "not supported by" or "conflict with" prior deposition testimony. *Id*. ¶¶ 17, 23, 26, 27, 28, 35, 41, 42, 53, 54, 55, 60, 61.

As for the separate fact statements accompanying Brownlee's motion for summary judgment on Washington's assault counterclaim, Washington contends that several paragraphs of Brownlee's Local Rule 56.1(a)(3) fact statement are not supported by the record. Washington Resp. to Brownlee SOF, ECF No. 94 ¶¶ 6, 8, 9. Several other paragraphs are labelled material.

*Id.* ¶ 11, 16, 17.  Washington also cross-references his entire statement of additional facts in response to paragraph 13.

### 2. *Violations of Local Rules and Standing Order*

Raising the foregoing arguments in Local Rule 56.1 fact statements violates this court's standing order on motions for summary judgment (available from the court's website).  The standing order specifies how factual assertions, arguments about the reasonableness of inferences to be drawn from cited materials, and other legal arguments should be distributed among the Local Rule 56.1 fact statements, responses, and legal memoranda.  Regarding responses to a Local Rule 56.1(a)(3) fact statement, the order (p. 2) states "Local Rule 56.1(b)(2) requires a memorandum of law.  This is the document in which all argument should be contained."  "All" means all.  By objecting or including an argument in a response to a Local Rule 56.1(a)(3) response, the party resisting summary judgment deprives the moving party of the chance to reply. Including arguments in a Local Rule 56.1(b)(2) memorandum of law or in a separate motion to strike avoids these problems by permitting full adversary presentation.  *Tabiti v. LVNV Funding, LLC,* 2019 WL 1382235, at *3 (N.D. Ill. Mar. 27, 2019) (Gottschall, J.) (citing *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1038 (N.D. Ill. 2018) (Gottschall, J.)).

Even though not properly raised by the parties, questions such as relevance, materiality and whether an affidavit is based on personal knowledge, Fed. R. Civ. P. 56(c)(4), can often be resolved without great difficulty at summary judgment.  *See, e.g.*, *Rivera*, 319 F. Supp. 3d at 1018.  The fact statements here raise other, more complex legal arguments in a perfunctory way, however.  One example follows.

Defendants' 13 objections that affidavits and declarations conflict with prior deposition testimony require a careful, often fact-intensive analysis particularly poorly suited to

development in Local Rule 56.1 fact statements and responses. Generally, the Seventh Circuit "does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Dunn v. Menard, Inc.*, 880 F.3d 899, 910–11 (7th Cir. 2018) (internal quotations omitted) (*quoting Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). Some inconsistencies do not always turn out to be direct contradictions, however, and apparent contradictions can sometimes be explained, such as "because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Dunn,* 880 F.3d at 910–11 (internal quotations omitted); *see also Abraham v. Washington Grp. Int'l, Inc*., 766 F.3d 735, 741 (7th Cir. 2014) (stating that a "sham affidavit" is "a descriptive term used to describe an affidavit that directly contradicts prior deposition testimony and therefore is considered generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained") (internal quotations omitted); *Buckner*, 75 F.3d at 292 (affidavit may be used "to clarify ambiguous or confusing deposition testimony"). Plaintiffs have not had an opportunity to respond to defendants' arguments regarding purported contradictions between deposition testimony and affidavits. The arguments are often perfunctory, and defendants do not cite legal authority. Even worse, defendants injected their "sham affidavit" arguments in a Local Rule 56.1(b)(3) response to which no reply is permitted. Defendants develop parts of their sham affidavit arguments in their reply memoranda, again depriving plaintiffs of the opportunity to rebut those arguments. *See* Reply Supp. Mot. Summ. J. Brownlee's Claims 4–6, 14, ECF No. 108; Tate Reply 3–5, 6, ECF No. 105; Fleming Reply 2–6, 8, 12–15, ECF No. 110. Considering defendant's "sham affidavit" arguments would therefore be unfair to plaintiffs. *See Tabiti*, 2019 WL 1382235, at *3 (citing *Hernandez*, 634 F.3d at 913) (explaining that arguments made for the

first time in a reply are waived because the opposing party has not had an opportunity to respond).

This court has discretion to adjudicate the summary judgment motions by disregarding all improper arguments made in the Local Rule 56.1 fact statements, deeming facts undisputed where appropriate. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359–60 (7th Cir. 2009) (affirming decision to disregard "argumentative" Local Rule 56.1 statement); *Rivera*, 319 F. Supp. 3d at 1018 (collecting additional authority). Taking that course makes sense for motions aimed at Tate's claims and Washington's counterclaim because the motions can be resolved on fairly narrow legal and factual grounds. But the dozens of relevance, materiality, personal knowledge, and sham affidavit issues raised in the fact statements strike at the heart of the complicated legal and factual issues raised by the claims of Fleming and Brownlee. "District courts are not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (quoting *Bordelon v. Chicago Sch. Reform Bd.*, 233 F.3d 524, 529 (7th Cir. 2000)).

The court therefore strikes the Local Rule 56.1 fact statements and denies the motions for summary judgment on Brownlee and Fleming's claims without prejudice. If either motion is refiled all arguments must be made either in the legal memoranda or a motion to strike.

Because the court reaches defendants' motion for summary judgment on Tate's claims, it now considers her objection to paragraph 51 of defendants' SOF. Tate objects that a portion of paragraph 51 is "incorrect." *See* ECF No. 97 at 18. The court need not resolve the objection because Tate concedes that the portion of paragraph 51 the court finds to be material here is undisputed. Specifically, regarding her charge of discrimination with the Equal Employment

Opportunity Commission, Tate "admits that said charge of discrimination was filed on August 19, 2015." *Id.*

### III. Timeliness of Tate's Title VII Claims

Tate brings a Title VII hostile work environment claim and a constructive discharge claim. To provide context, the court briefly summarizes the facts drawing reasonable inferences in Tate's favor.

Tate began working for Catholic Charities as a mobile outreach worker in October 2012; she resigned by letter dated October 22, 2014. Resp. to SOF ¶¶ 33, 47, ECF No. 97. Tate and Washington worked together as partners "no more than five times." *Id.* ¶ 36. While walking behind Tate and plaintiff Fleming, Washington made a sexually suggestive remark in October 2012, commenting that he "wished he was their jeans." Resp. to SOF ¶ 37 (undisputed fact). Washington allegedly made another harassing comment to Tate in October 2013, telling her that he would have had her working on a street corner because he was a pimp "back in the day." *See* Resp. to SOF ¶ 40. Sometime in fall or winter 2013, Washington showed Tate pornography on his cell phone. Resp. to SOF ¶ 42. Tate told Ray Lee, her supervisor, "you need to talk to your boy [Washington]" and Lee said he would do so. Resp. to SOF ¶ 43 (undisputed). Tate does not believe Lee spoke to Washington. *See* Resp. to SOF ¶ 44. Tate kept working at Catholic Charities for at least six more months; she was never partnered with Washington again. Resp. to SOF ¶ 46. Tate avers that she was nevertheless required to work in the same environment as Washington. *See* Tate Aff. ¶ 16, ECF No. 98 Ex. C.

Defendants raise a number of arguments at summary judgment, but the court reaches only defendants' contention that Tate missed the deadline, by one day, to file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

Before suing, Title VII requires an employee to exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Chaidez v. Ford Motor Company*, 937 F.3d 998, 1004 (7th Cir. 2019) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)); 42 U.S.C. § 2000e-5. The plaintiff "may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099–1100 (7th Cir. 2013) (citations omitted); *see also Chadiz*, 937 F.3d at 1004–05 (elaborating on this standard). The plaintiffs here had 300 days "after the unlawful employment practice occurred" to file a charge of discrimination. 42 U.S.C. § 2000e-5(e)(1); *Brown v. Ill. Dep't of Nat. Res.*, 499 F.3d 675, 681 (7th Cir. 2007).

Defendants contend that Tate missed the 300-day deadline by one day. She filed her charge of discrimination on August 19, 2015. Resp. to SOF ¶ 51, ECF No. 97. Three-hundred and one days earlier, on October 22, 2014, Tate sent her boss a letter tendering her resignation effective nine days later, on October 31, 2014. Resp. to SOF ¶ 47 (quoting letter from Tate to Rouse, Oct. 22, 2014, ECF No. 79-1 p. 88 of 91). Tate did not work at Catholic Charities after October 22; she used vacation days, between October 23–31, before starting a new job. Resp. to SOF ¶¶ 48, 50. She asked to remain "on call" at Catholic Charities. *Id.* ¶ 48. Tate maintains that her claims accrued on the date her resignation took effect rather than the date she notified Catholic Charities of her resignation. She argues that she could have been subjected to further harassment had she been called into the office between October 23–31. Resp. to Mot. Summ. J.

3–4, ECF No. 99.  Strangely, neither Tate nor Catholic charities cites controlling Supreme Court

authority.  *See id*. (citing no legal authority at all); *see also* Brownlee I, 2017 WL 770997, at *3

(citing the Supreme Court case discussed below for a different proposition).

The Supreme Court adopted an accrual rule for Title VII constructive discharge claims in

*Green v. Brennan*, 136 S. Ct. 1769 (2016).  "We hold that a constructive-discharge claim

accrues—and the limitations period begins to run—when the employee gives notice of his

resignation, not on the effective date of that resignation."  *Id*. at 1782.  The Court used a

hypothetical to illustrate.  If an employee gives two weeks' notice that he is quitting, the

limitations period begins running "when the employee gives notice of his resignation, not on the

effective date of that resignation."  *Id*.

*Green*'s notice rule controls here.  Tate does not dispute that she gave Catholic Charities

nine days' notice of her resignation on October 22, 2014.  Resp. to SOF ¶ 47, ECF No. 97.  That

Tate offered to be on call is immaterial.  Even if Tate had worked until October 31 or given two

weeks' notice, under *Green* her wrongful discharge claim accrued when she notified Catholic

Charities of her resignation, not when her resignation took effect.  *Green*, 136 S. Ct. at 1782.

Accordingly, Tate's wrongful discharge claim must be dismissed as time-barred by one day.

Determining when Tate's hostile work environment claim accrued requires a slightly

different analysis.  *See Green*, 136 S. Ct. at 1782 ("The limitations-period analysis is always

conducted claim by claim.").  The Supreme Court set out the governing limitations principles in

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  In *Morgan*, the Court drew

a "sharp" distinction between Title VII intentional discrimination claims based on the creation of

a hostile work environment and "discrete" employment actions, such as discharging an

employee.  *Ford v. Marion County Sheriff's Office*, 942 F.3d 839, 850–51 (7th Cir. 2019) (citing *Morgan*, 536 U.S. at 115).  "A hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Ford*, 942 F.3d at 851 (7th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Thus, *Morgan* holds that, unlike an employment practice categorized as a discrete act of discrimination, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period" for filing a charge, 300 days here.  *Morgan*, 536 U.S. at 121.  Under the continuing violation doctrine, The jury may "consider[ ] . . . the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period . . . for the purpose of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) (quoting *Morgan*, 536 U.S. at 105) (discussing the continuing violation doctrine).

Tate argues that the continuing violation doctrine saves her hostile environment claim because, despite her complaints to Lee, Catholic Charities kept Washington and Tate on the same shift until she resigned effective October 31, 2014.  Resp. to Mot. to Dismiss 4–6, ECF No. 99. Tate cites Seventh Circuit decisions recognizing that "in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment."  *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998) (quoting *Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991)) (other citation omitted); *Saxton v. Am. Tel. & Tel. Co.,* 10 F.3d 526, 536 n.18. (7th Cir. 1993) (also quoting *Ellison*).  But in

*Ellison*, the Ninth Circuit asked "whether the mere presence of a harasser would create a hostile environment from the perspective of a reasonable woman." *Ellison*, F.2d at 883. As the Ninth Circuit's test suggests, the inquiry focuses on how, if at all, the harasser's presence in the workplace affected the terms or conditions of the plaintiff's employment. *See Morgan*, 536 U.S. at 115; *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) (holding that each day harasser was in the same office building as the plaintiff was an act of harassment for limitations purposes); *Allen v. Am. Signature, Inc.*, 272 F. Appx. 507, 510 (7th Cir. 2008) (holding hostile environment claims accrued when harassing behavior stopped).

Here, there is no dispute that Tate did not actually go to work in the office with Washington after October 22, 2014. Resp. to SOF ¶ 48. Because Tate gave notice of her resignation and took another job, there is no genuine dispute about whether Washington's presence affected the terms or conditions of her employment between October 23–31.[2] Accordingly, Tate's hostile work environment claim is also time-barred by one day.

By almost any measure, dismissing Tate's claims for missing the Title VII filing deadline by one day produces a harsh result. Indeed, the Supreme Court has recognized that "[f]iling deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." *United States v. Locke*, 471 U.S. 84, 101

---

[2] On this record, the court need not determine whether a hostile work environment claim can ever accrue after the date on which the plaintiff notifies her employer that she intends to resign. The question here is whether "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. *Morgan*, 536 U.S. at 122. Tate has not pointed to any qualifying act here.

(1985) (Marshall, J.). Doctrines such as equitable tolling and estoppel provide relief from the harsh effects of the statute of limitations. But those doctrines generally require the plaintiff to prove that the employer concealed facts from the plaintiff or worked to prevent her from discovering the basis for her claims. *See generally Morgan*, 536 U.S. at 121 (acknowledging that doctrines apply); *Jackson v. Rockford Hous. Auth*. 213 F.3d 389, 394 (7th Cir.2000) (discussing equitable estoppel and equitable tolling); *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992) (equitable estoppel). Tate discusses neither doctrine in her briefing, however, and this court will not construct arguments for the parties. Tate's claims are dismissed for failure to exhaust as required by 42 USC § 2000e-5(e)(1).

## IV. Washington's Assault Counterclaim

Brownlee moves for summary judgment on Washington's assault counterclaim. The common law torts of battery, assault and false imprisonment "are intended to redress violations of bodily integrity and personal liberty." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997) (citing 3 W. Blackstone, Commentaries 119–20, 127–28)). People sometimes use the terms assault and battery interchangeably in everyday conversation. Boiled down to its essence, common law battery consists of "the unauthorized touching of the person of another." *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (quoting *Curtis v. Jaskey*, 759 N.E.2d 962, 964 (Ill App. Ct. 2d Dist. 2001)). Common law assault is "conduct which places another in reasonable apprehension of receiving a battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (quoting 720 ILCS 5/12–1(a)). The Seventh Circuit has interpreted the Illinois law of assault as requiring "(1) a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an imminent battery."

*Id.* (citing *Merheb v. Ill. State Toll Highway Auth'y*, 267 F.3d 710, 714 (7th Cir.2001)) (other citations omitted).  Brownlee contends that Washington can establish neither element.  The court agrees.

### A. The Facts

Brownlee disputes the material facts in many important respects, especially Washington's contentions about her drug use and her sons' alleged gang ties.  The court recites them in the light most favorable to Washington.

Brownlee and Washington worked as partners delivering food to community members on June 16, 2015.  *See* Washington Resp. to Brownlee SOF ¶¶ 2–4, ECF No. 95.  They began to argue as they were driving to the Catholic Charities office after attempting a delivery.  *Id.* ¶ 5. At some point, Washington touched Brownlee's shoulder (whether he touched her shirt or shoulder is disputed); he testified that he was trying to get her attention.  *See id.* ¶¶ 6–7; Washington SAF ¶ 6, ECF No. 95.

At his deposition, Washington testified that Brownlee looked upset when he touched her, and she said to him, ""Don't touch me" and "I'll have my son come up here and kick your ass." Id. ¶ 8 (quoting Washington Dep. 184:2-5, ECF No. 98-9).  Washington provided a different version of Brownlee's threat in a report dated June 22, 2015, "If you pull this van over my son will fuck you up because I am going to get out and walk back. You don't want me to walk back! I am going to make sure that my son gets you. You don't know who you are fucking with!"  *Id.* ¶ 12 (citing Washington Ex. 18 at 4, Tab 3). Washington also testified at his deposition that

Brownlee had been driving erratically that day, that she repeatedly cursed at him, and that he believed that she was high on illegal drugs. *See* Washington SAF ¶¶ 1–4, 8.

Washington's son was not in the car. *Id.* ¶ 15 (undisputed). But Washington believed he was a gang member who had little regard for life. Washington SAF ¶¶ 9–11. As Washington characterizes his testimony, he "feared that Brownlee would personally carry out her threat to "fuck him up" by directing her son, a known gang member, to do it for her." *Id.* ¶ 14 (citing Washington Dep. 192:9-193); Washington SAF ¶¶ 13–14. One day after the incident, Washington filed a police report claiming Brownlee assaulted him. *See* Washington Resp. to Brownlee SOF ¶ 18–19; Washington SAF ¶¶ 12. Washington also did not come to work the day after the incident because he feared for his safety. Washington SAF ¶ 15.

### B. Threatening Gesture

Even viewing the summary judgment evidence in the light most favorable to Washington, Brownlee merely cursed at him and verbally threatened him. She did no more. Washington points to no evidence that she made a move toward him or made any other gesture. Instead, he cites cases decided in 1989 and 2002 to argue that he can recover for assault based on a verbal threat without an accompanying threatening gesture. Resp. to Mot. Summ. J. 9–10, ECF No. 96 (citing *People v. Ferguson*, 537 N.E. 2d 880, 882 (Ill. App. Ct. 1st Dist. 1989) and *Jackson v. Local 705, Int'l. Bhd. Of Teamsters*, 2002 U.S. Dist. LEXIS 4908, at *40, 43 (N.D. Ill. Mar. 22, 2002)).

The cases Washington cites predate the Seventh Circuit's decision in *Kijonka v. Seitzinger*, 363 F.3d 645 (7th Cir. 2004). The Seventh Circuit conducted a probable cause

analysis. In *Kijonka* and held that a threatening gesture is an "element" of a civil and criminal assault claim. *Id.* at 647. Conversely, "A merely verbal threat of indefinite action in the indefinite future," like Brownlee's threats as described by Washington, "is "not an assault." *Id.* (citing *People v. Floyd*, 663 N.E.2d 74, 76 (Ill. App. Ct. 1st Dist. 1996)) (other citations omitted).

In *Kijonka*, the defendant allegedly drove up to the plaintiff's home, rolled down his window, said, "Your ass is mine you son of a bitch, and I will get you," and drove away. 363 F.3d at 646. Those facts could not sustain an assault claim because there was no threatening gesture and because they did not justify the reasonable apprehension of an imminent battery. *Id.* at 647–48. Since Brownlee's son was not in the car, Resp. to SOF ¶ 14, ECF No. 97, Brownlee's verbal threats that her son would attack Washington at some undetermined future time, accompanied by no threatening gesture, similarly fall short of the requirements of an assault claim.

Washington's efforts to distinguish *Kijonka* fail. True, the precise question before the *Kijonka* court was whether probable cause existed to arrest a person for criminal assault. *See Kijonka*, 363 F.3d at 646. But the Seventh Circuit's opinion makes plain that its interpretation of Illinois law applies to civil and criminal assault claims alike. *See id.* at 647 ("ever since the fourteenth century, assault whether civil or criminal has involved (1) a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an imminent battery." (citing *Merheb v. Ill. State Toll Highway Aut'y*, 267 F.3d 710, 714 (7th Cir. 2001))) (other citations omitted). The Seventh Circuit has cited *Kijonka* in a civil assault case for the rule that "assault 'whether civil or criminal' requires

[a] 'threatening gesture' that 'creates a reasonable apprehension of an imminent battery'" *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 548 (7th Cir. 2018); *see also Abbott v. Sangamon Cnty.*, 705 F.3d 706, 715–16 (7th Cir. 2013). Indeed, the *Kijonka* court distinguished the Illinois case on which Washington relies here, *Ferguson*, because the defendant there did indeed make a threatening gesture, albeit before he verbally threatened the plaintiff. *Kijonka*, 363 F.3d at 647–48.

This court must follow *Kijonka's* interpretation of Illinois assault law as binding authority unless and until the Illinois Supreme Court, the Seventh Circuit, or the United States Supreme Court decides differently. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029–30 (7th Cir. 2007). That said, the Illinois Appellate Court has stated since *Kijonka* that assault requires "some action or condition" to accompany threatening words. *People v. Williams*, 2017 IL App (1st) 143557-U ¶ 18 (citing *People v. Taylor*, 2015 IL App (1st) 131290 ¶15). Because these cases and Illinois, as interpreted in *Kijonka*, require a gesture and Washington has produced no evidence that Brownlee made any move toward him, his assault counterclaim must be dismissed.

## C. Reasonable Apprehension of an Imminent Battery

Washington has also failed to create a fact issue on whether his stated fears of an imminent physical attack were objectively reasonable. *Taylor*, a criminal case, is instructive on what is required to justify a reasonable fear of an imminent battery. *See Kijonka*, 363 F.3d at 647–48 (relying on civil and criminal assault cases when analyzing this issue).

The defendant in *Taylor* was charged with assault for threatening a deputy sheriff as the defendant, Taylor, was exiting a courthouse. 2017 IL App (1st) 143557 ¶ 3. According to the

trial testimony of the deputy, the deputy escorted the defendant out of the courthouse. *Id.* ¶ 3.

The defendant followed the deputy's orders to leave but cursed at the deputy as the defendant

was being escorted out. *See id.* "At the exit, defendant entered the first set of automatic airlock

doors, which the deputy testified could be easily pulled open. After the doors shut, defendant

turned around to face the deputy, who was 7 to 10 feet away outside the doors and said 'I'm

going to get you. I'm going to kick your ass.'" *Id.* The Illinois Appellate Court reversed the

defendant's assault conviction because "no reasonable person could find an assault where there

is no evidence that defendant was armed with any weapon and where the deputy, by her own

testimony, was 7 to 10 feet from defendant behind airlock doors which would need to be pulled

open manually to approach her." *Id.* ¶ 17.

      If a distance of seven feet and the presence of a door that could be easily opened did not

justify the deputy's reasonable fear of an imminent battery, the facts at summary judgment here

certainly do not. Even in Washington's version of the facts, Brownlee's son was not in the car

when Brownlee threatened him, and Brownlee did not say when he would attack Washington.

Washington Resp. to Brownlee SOF ¶ 10, 14, ECF NO. 94 (undisputed facts). The summary

judgment record does not disclose the whereabouts of Brownlee's son on June 16, 2015, but

considerably more than seven feet and a door separated him from Washington. *See id.* The

threat of physical violence Washington faced was therefore objectively less immediate than the

threat in *Taylor*, and Washington's assault claim therefore fails. *See Taylor*, 2017 IL App (1st)

143557 ¶¶ 17–18 (distinguishing cases in which apprehension of an imminent battery was

objectively reasonable).

### V. Conclusion

For the reasons stated, defendant's motion for summary judgment on Tate's claims and Brownlee's motion for summary judgment on Washington's assault counterclaim are granted. The motions for summary judgment on the claims of Brownlee and Fleming are denied without prejudice because the parties have not complied with Local Rule 56.1 and this court's standing order on summary judgment motions. Any refiled motions are due within 28 days.

ENTERED this 28th day of February 2020.

/s/
_____
Joan B. Gottschall
United States District Judge