**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ESTHER BROWNLEE and JOANIE FLEMING,** | |
| **Plaintiffs,** | |
| vs. | Case No. 16-cv-00665 |
| **CATHOLIC CHARITIES OF THE ARCHDIOCESE OF CHICAGO AND DWAYNE WASHINGTON,** | Judge Franklin U. Valderrama |
| **Defendants.** | |

**DEFENDANT CATHOLIC CHARITIES OF THE ARCHDIOCESE OF CHICAGO'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

Defendant Catholic Charities of the Archdiocese of Chicago, by and through its attorneys, Neil H. Dishman and Julia Pearce Argentieri of Jackson Lewis, P.C., submits this Memorandum in Support of Its Motion for Reconsideration of the Court's summary-judgment ruling (Dkt. No. 145) and states as follows:

## **INTRODUCTION**

Though this Motion is styled as one for "reconsideration" (for lack of a better term), that is an inapt way to describe it; most of what Catholic Charities seeks here is for the Court to consider for the *first time* arguments that it did not address in its ruling on Defendants' Amended Motions for Summary Judgment. In particular, Catholic Charities advanced several arguments that the Court stated it "need not consider," without explanation. These arguments present independent grounds for summary judgment that would alone be dispositive of various claims, and Catholic Charities thus urges the Court to consider and rule on these arguments before the case proceeds further. Catholic Charities also requests that the Court reconsider its ruling on one additional argument that the Court did consider and reject.

With respect to both Plaintiffs, Joanie Fleming and Esther Brownlee, the Court declined to determine whether a basis exists for employer liability on their claims of sexual harassment (Counts I and III). After rejecting various other arguments Defendants made for summary judgment on these claims, the Court stated that its rejection of those other arguments "precludes summary judgment, and the Court need not address . . . employer liability." (Dkt. No. 145, pp. 33, 55.) However, employer liability is an independent element of Fleming's and Brownlee's harassment claims that they must prove in order to prevail before a jury; Catholic Charities thus requests the Court consider its arguments that there is no genuine issue of material fact as to this element of each Plaintiff's claim.

1

Similarly, the Court declined to consider whether Brownlee established causation in her retaliation claim (Count V). Catholic Charities argued that Brownlee could not establish two necessary elements of her retaliation claim: that she engaged in protected activity and that there was a causal link between her protected activity and her termination. The Court considered and rejected the first argument, but it then stated, without explanation, that it "need not address" causation. (Dkt. No. 145, p. 40.) Again, Catholic Charities' arguments regarding causation, if accepted by the Court, would provide an independent basis for summary judgment on that claim. Catholic Charities requests the Court fully consider and rule on those arguments.

Finally, to the extent Fleming's sexual-harassment claim (Count III) is not otherwise dismissed for the reasons above, Catholic Charities additionally requests reconsideration of that claim and its factual basis. The Court ruled that Fleming's claim could be supported only by comments that Defendant Dwayne Washington made to her between January 2015 and November 2015. Under extensive questioning at her deposition, Fleming identified only one specific comment that Washington allegedly made to her during that period. However, the Court ruled that this claim could proceed, on the strength of Fleming's post-deposition declaration stating only the conclusion that Washington made sexual comments to her "from October 2012 to November of 2015." (Dkt. No. 131-7, ¶ 6.) Catholic Charities first requests that the Court reconsider whether this evidence—a single, non-severe comment and a vague conclusion—is sufficient to survive summary judgment, as controlling Seventh Circuit authority holds otherwise. Alternatively, if the Court declines to reconsider this aspect of the ruling, Catholic Charities requests that the Court re-open discovery for the limited purpose of permitting Catholic Charities to re-depose Fleming about these additional comments, as she revealed none of them when questioned at her deposition.

2

## PROCEDURAL HISTORY

On June 12, 2020, Defendants filed an amended partial motion for summary judgment as to Plaintiff Esther Brownlee's claims (Dkt. No. 123) and an amended motion for summary judgment as to Plaintiff Joanie Fleming's claims. (Dkt. No. 125.) Brownlee and Fleming submitted declarations along with their responses to Defendants' motions for summary judgment. (Dkt. No. 131-4 and Dkt. No. 131-7.) Defendants moved to partially strike the declarations, due in part to various statements being inconsistent with Plaintiffs' deposition testimony. (Dkt. No. 136.) On January 27, 2021, the Court granted in part, and denied in part, Defendants' motions for summary judgment. (Dkt. No. 145.) In pertinent part, the Court denied Defendants' motion for summary judgment as to: Count I (sexual harassment – Brownlee), Count III (sexual harassment – Fleming), and Count V (retaliation – Brownlee).[1] (*Id.*) The Court struck paragraphs 25 and 26 of Fleming's declaration (Dkt. No. 131-7) but otherwise denied Defendants' motion to strike and considered the declarations in ruling on summary judgment. (Dkt. No. 145.)

Catholic Charities respectfully asserts that the Court's ruling declined to consider several key issues which must be decided to resolve Counts I, III, and V. (Dkt. No. 145, pp. 33, 40, 55.) Further, even with the Court admitting most of Plaintiffs' declaration statements, Catholic Charities maintains that its arguments favoring summary judgment on Counts I, III and V continue to apply following the Court's ruling. Catholic Charities thus moves for reconsideration.

## LEGAL STANDARD

---

[1] These three Counts are brought against Catholic Charities only, which is why Washington is not a party to this Motion.

3

Catholic Charities requests reconsideration pursuant to Fed. R. Civ. P. 54(b). Rule 54(b) permits a party to request reconsideration at any time on rulings that do not adjudicate all claims where a final judgment has not been rendered. *See Fox v. Admiral Ins. Co.,* 2016 U.S. Dist. LEXIS 83542, *3 (N.D. Ill. June 28, 2016). The authority of a court to reconsider a prior ruling under Rule 54(b) is governed by the law of the case, which authorizes reconsideration in the court's discretion where there is a compelling reason to do so. *Santamarina v. Sears,* 466 F.3d 570, 572 (7th Cir. 2006) (affirming grant of motion to reconsider and explaining the Rule 54(b) standard). Where compelling justification exists for a motion to reconsider under Rule 54(b), "[n]ot to reconsider in such circumstances would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings, would compel a reversal of the final judgment at the end of the case." *Id.* at 572. Reconsideration is not a tool to re-argue the merits of the case but should be granted where it is necessary to correct a clear error in law or fact, including the court's misapplication of law or misapprehension of the facts. *Neal v. Newspaper Holdings, Inc.,* 349 F.3d 363, 368 (7th Cir. 2003).

Notably, a motion for reconsideration is the appropriate vehicle for relief where the district court fails to rule on a necessary issue in deciding summary judgment. *See Gosnell v. Troy,* 979 F.2d 1257, 1260 (7th Cir. 1992) (dismissing appeal and finding that where district court failed to consider qualified-immunity defense in summary-judgment decision, party should have filed motion to reconsider prior to filing appeal and case was in "jurisdictional limbo" because lower court had not yet spoken on necessary issue).

## ARGUMENT

**I.     Plaintiffs' Sexual Harassment Claims Fail Because There is No Basis for Employer Liability. (Counts I and III)**

4

Catholic Charities requested summary judgment on Count I (sexual harassment – Brownlee) and Count III (sexual harassment – Fleming) on several grounds, including that both Brownlee and Fleming failed to establish a basis for employer liability for any alleged sexual harassment. (*See* Dkt. No. 123, pp. 8-9; Dkt. No. 125, pp. 9-11.) In reviewing Defendants' Amended Motions for Summary Judgment, the Court agreed with Defendants regarding the *prima facie* elements of a sexual-harassment claim. The Court explained that to survive summary judgment, "a plaintiff must adduce evidence sufficient for a reasonable jury to find that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [sex]; (3) the conduct was either severe or pervasive; <u>and</u> (4) <u>there is a basis for employer liability</u>." *Scruggs v. Garst Seed Co.,* 587 F.3d 832, 840 (7th Cir. 2009) (emphasis supplied). (Dkt. No. 145, p. 29.) Because the Court's ruling did not consider element four (basis for employer liability), reconsideration of Counts I and III is proper.

### A. Reconsideration is Proper Because Fleming Did Not Establish a Basis for Employer Liability and the Court Did Not Address This Issue. (Count III)

In reviewing Fleming's claim of sexual harassment (Count III), the Court held that the continuing-violation doctrine did not apply and precluded Fleming from presenting evidence of sexual harassment outside of Washington's alleged conduct within 300 days before her charge was filed (January-November 2015). (Dkt. No. 145, p. 54.)[2] The Court went on to hold that, with respect to the alleged sexual harassment during that time period from January-November 2015, "[t]he Court finds it to be a question of fact as to whether this constitutes severe and pervasive harassment (a requisite element of a sexual harassment claim). Reaching this determination

---

[2] The Court additionally dismissed Fleming's claim of sexual harassment regarding an auto vendor, Vaia, finding it to be time-barred. (*See* Dkt. No. 145, p. 51.)

5

precludes summary judgment, and the Court need not address Defendants' final argument regarding employer liability." (Dkt. No. 145, p. 55.)

But summary judgment cannot be resolved without a determination as to whether a basis for employer liability exists. *See Scruggs,* 587 F.3d at 840. Even if Fleming has evidence of severe and pervasive harassment, that does not "preclude summary judgment"; her claim still fails if she has no evidence to support employer liability for that harassment.

And here, the Court's ruling limiting the period of Fleming's sexual-harassment claim necessitates a finding that Fleming cannot establish employer liability. Any facts regarding Fleming complaining of sexual harassment are now time-barred. Specifically, due to the vague nature of Fleming's declaration, and the court dismissing virtually all other alleged harassment as time-barred, there are insufficient facts in the record to suggest that Catholic Charities was aware of Washington harassing Fleming from January-November 2015 and failed to address it. *Williams v. Waste Mgmt. of Illinois, Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004) (where alleged harasser is a co-worker, employer is liable only if it knew or should have known of harassment and failed to respond). In her deposition, Fleming identified only one comment, not directed at her, that she overheard during that entire time period: Washington saying, "how did you get up in there?" to Ray Lee in reference to an overweight co-worker. (SOF ¶ 54.) And Fleming did not testify that she reported this comment to Catholic Charities. Catholic Charities therefore was not on notice that Washington sexually harassed Fleming in the 300 days before her charge was filed.

Fleming's declaration does not change this result. Her declaration states generally that Washington made sexual comments to her from October 2012 to November 2015, and each time Washington would make a sexually inappropriate comment to her, she would tell him to stop and report it to Ray Lee. (Dkt No. 131-7, ¶¶ 6, 8-9.) But the comments themselves are not identified,

6

nor are the dates, or frequency.[3] (*Id.*) Accepting Fleming's declaration statements as admissible, Fleming nonetheless fails to establish what she reported to Ray Lee, when she reported it, and if any reporting occurred during the time period from January-November 2015 that was sufficient to put Catholic Charities on notice of sexual harassment. Lacking such basic details, there are no facts to support the conclusion that Catholic Charities was properly put on notice of Fleming's alleged sexual harassment from January-November 2015 and failed to respond. Accordingly, as previously set forth in Defendants' amended motion for summary judgment (Dkt. No. 125, pp. 10-12), Fleming's harassment claim cannot withstand summary judgment because Catholic Charities was not negligent, and no basis for employer liability exists. *Cooper-Schut v. Visteon Auto Sys.,* 361 F.3d 421, 428 (7th Cir. 2004) (affirming summary judgment and explaining that first inquiry is whether employer was on notice of the problem); *see also, Hunt v. Wal-Mart Stores, Inc.,* 931 F.3d 624, 630 (7th Cir. 2019) (affirming summary judgment).

Finally, even if the Court were to find that Fleming could have potentially reported overhearing this single remark that is not time-barred, "how did you get up in there?" to Ray Lee in April 2015, which is not consistent with Fleming's deposition testimony, Fleming still cannot survive summary judgment because there remains no basis for employer liability. This is true for two reasons. First, as Catholic Charities explained in its motion for summary judgment, complaining to the lowest-level supervisor—who is believed to be friends with the alleged harasser and not known to have real authority to address harassment complaints—is not a reasonable means of putting the employer on notice. *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 550 (7th Cir.

---

[3] *See* Section III, *infra*, for additional explanation regarding how Fleming fails to establish that severe or pervasive harassment occurred from January-November 2015. Given that Fleming cannot overcome that hurdle and establish severe or pervasive harassment, she similarly cannot establish that she reported anything to Catholic Charities amounting to severe or pervasive harassment within that period.

7

2011) (affirming summary judgment). Second, there are no factual allegations that any further harassment occurred thereafter, so Fleming cannot establish that Catholic Charities was negligent. *Cooper-Schut,* 361 F.3d at 428.

### B. Reconsideration is Proper Because Brownlee Also Did Not Establish a Basis for Employer Liability and the Court Did Not Address This Issue. (Count I)

In Count I (sexual harassment – Brownlee), much like in Count III above, the Court declined to reach the question of employer liability. The Court rejected Catholic Charities' arguments that the alleged harassment was not severe or pervasive; it then stated that this determination "precludes summary judgment, and the Court need not address Catholic Charities' second argument regarding employer liability." (Dkt. No. 145, p. 33.)

Again, the Court cannot resolve summary judgment without determining whether a basis for employer liability exists. *See Scruggs,* 587 F.3d at 840. Even if there is evidence that severe and pervasive harassment occurred, Brownlee's claim still fails if she has no evidence to support employer liability for that harassment.

As Catholic Charities presented in its amended partial motion for summary judgment (Dkt. No. 123), Catholic Charities was not negligent, as Brownlee failed to take reasonable steps to escalate any alleged complaints and alleges only that she complained to the lowest-level supervisors (Lee, and also now Jason Marsh in her declaration), who had no authority to effectively resolve this type of complaint. If Brownlee thought Lee and Marsh failed to respond adequately to her complaints, Catholic Charities' policy instructed and required her to then escalate the issue to Human Resources, but she did not. (SOF ¶ 14.) Her failure to do so was unreasonable—particularly given that she had made complaints to HR about other issues in the past and had them resolved to her satisfaction (SOF ¶¶ 87-88)—and it precludes a finding of employer liability. *Westbrook v. Ill. Dep't of Human Servs.,* 2018 U.S. Dist. LEXIS 48814, *28-29 (N.D. Ill. March

8

26, 2018) (employee's purported complaints to one low-level supervisor failed to demonstrate that employee made a "concerted effort" to put employer on notice); *Yancick,* 653 F.3d at 549 (affirming summary judgment and stating, "given…[the immediate supervisor]'s unwillingness and refusal to address the situation, it was unreasonable for [plaintiff] to believe that [the immediate supervisor] would convey his complaints up the ladder.").

And once HR, which had proper authority to investigate a complaint (SOF ¶ 15), learned of the allegedly violent incident between her and Washington—which HR learned about from Renee Rouse, not Brownlee (SOF ¶¶ 123-124)—Brownlee never worked with Washington again, and no further harassment occurred (SOF ¶ 129.) On top of that, Catholic Charities terminated Ray Lee around the same time, after it received a complaint about him. (SOF ¶¶ 69.)

Given Brownlee's initial failure to escalate complaints and Catholic Charities' proper handling of her complaints when HR was notified, Catholic Charities was not negligent, and summary judgment is proper because no basis exists for employer liability. *Hunt,* 931 F.3d at 630 (employer's anti-harassment policy, trainings, reporting mechanisms, and investigations of those complaints brought to its attention demonstrated reasonable care).

**II.    Reconsideration is Proper Because Brownlee Cannot Establish a Causal Link in Her Retaliation Claim and the Court Did Not Address This Issue. (Count V)**

Catholic Charities requested summary judgment on Count V (retaliation – Brownlee). The Court's identified the elements of a retaliation claim as follows: "[t]o establish a . . . retaliation [claim] under Title VII, [Brownlee] must show: (1) [s]he engaged in a statutorily protected activity, (2) [her] employer took a materially adverse action against [her], and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield,* 926 F.3d 894, 896 (7th Cir. 2019) (emphasis supplied). The Court went on to deny Catholic Charities' motion for summary judgment based on the following reasoning: "[a] reasonable jury could find that

9

Brownlee complained to Lee about the sexual harassment she was facing. Reaching this determination precludes summary judgment, and the Court need not address Catholic Charities' second argument regarding causation." (Dkt. No. 145, p. 40.)

But even if Brownlee complained about harassment, her retaliation claim cannot withstand summary judgment without evidence of causation. *See Mollet,* 926 F.3d at 896. And as Catholic Charities previously argued in its motion for summary judgment, Brownlee has no facts to suggest a causal link between her alleged complaints and her termination. (Dkt. No. 123, pp. 10-11.)

First, Brownlee has no evidence to rebut Catholic Charities' non-retaliatory explanation for her termination, namely, that she undeniably engaged in unprofessional behavior including swearing at and threatening Washington, on top of an extensive prior disciplinary history which included a recent final written warning. (SOF ¶ 130.) *See Wyninger v. New Venture Gear, Inc.* 361 F.3d 965, 981 (7th Cir. 2004) (affirming summary judgment and noting that only concern is honesty of employer's explanation, not second-guessing whether outcome is correct).

Second, Brownlee admits that the only basis for her retaliation claim is that her termination closely followed her written complaint about Washington. (SOF ¶ 133.) This is insufficient as a matter of law to show causation. *Wyninger,* 361 F.3d at 981 ("mere temporal proximity" is insufficient to establish genuine issue of material fact). Moreover, Brownlee does not even possess evidence of "suspicious" timing, because her written complaint about Washington was in response to *HR's request* that she submit a written statement about her altercation with Washington. (SOF ¶ 125.) Thus, it comes as no surprise that HR made its determinations about disciplinary action for Brownlee (and for Washington) shortly after requesting written statements from all parties and completing its investigation. As set forth in Defendants' motion (Dkt. No. 123, pp. 10-11), Brownlee's unsupported speculation that her complaint caused the termination is insufficient.

*Kotaska, v. Fed. Express Corp.* 2018 U.S. Dist. LEXIS 141474, *53 (N.D. Ill. Aug. 21, 2018) (finding no evidence of causation); *Leigen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 675 (7th Cir. 2011) (affirming summary judgment and holding that timing alone is insufficient). Catholic Charities is thus entitled to summary judgment on Count V because Brownlee cannot establish causation.

### III. Reconsideration is Also Proper Because Fleming Failed to Establish Severe or Pervasive Sexual Harassment From January-November 2015. (Count III)

To prove sexual harassment, Fleming was required to present facts to establish that, "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [sex]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability." *Swyear v. Fare Foods Corp.,* 911 F.3d 874, 883 (7th Cir. 2018). (Dkt. No. 125, p. 7). As argued above, the Court should consider and accept Catholic Charities' argument that this claim fails because there is no basis for employer liability. In the alternative, Catholic Charities respectfully asks the Court to reconsider its conclusion that there is sufficient evidence of severe or pervasive conduct, as that conclusion is contrary to controlling authority.

At her deposition, Fleming identified only a single instance of sexual harassment within the 300 days before her EEOC charge was filed—overhearing Washington say, "how did you get up in there?" to Lee, in reference to an overweight female co-worker. (Dkt. No. 125, p. 6.) Her claim clearly cannot rest entirely on that single, non-severe comment; the Seventh Circuit routinely finds allegations far more egregious to be legally insufficient to show a hostile work environment. *E.g., Patt v. Family Health Sys., Inc.,* 280 F.3d 749 (7th Cir. 2002) (eight gender-related comments over several years "too isolated and sporadic to constitute severe or pervasive harassment").

To evade this result, in responding to summary judgment, Fleming submitted a declaration which included the following statement: "from October 2012 to November of 2015, Dwayne

11

Washington made sexual comments to me that interfered with my ability to do my job." (Dkt. No. 131-7, ¶ 6.) The Court denied Catholic Charities' request to strike this statement from the declaration. (Dkt. No. 145, pp. 25-26.) Then, based entirely on this statement, the Court went on to find that Fleming has sufficient evidence of severe or pervasive harassment:

> Looking only at interactions alleged between January 2015 and November 2015 (as all previous allegations are time-barred), the relevant evidence is "[t]hat from October 2012 to November of 2015, Dwayne Washington made sexual comments to [Fleming] that interfered with [her] ability to do [her] job." Fleming Aff. ¶ 6. The Court finds it to be a question of fact as to whether this constitutes severe and pervasive harassment (a requisite element of a sexual harassment claim).

(Dkt. No. 145, p. 55.)

Even accepting the Court's *evidentiary* conclusion (that this statement in Fleming's declaration is admissible and not a "sham affidavit"), the Court's *substantive* conclusion—that such vague, conclusory testimony is sufficient to defeat summary judgment—is contrary to law.

The Court cannot evaluate whether the sexual harassment alleged by Fleming is severe or pervasive if it rests entirely on the statement that "…Washington made sexual comments to me that interfered with my ability to do my job." (Dkt. No. 131-7, ¶ 6.) The Seventh Circuit has held that, in such circumstances, a harassment claim cannot proceed. *See Porter v. City of Chicago,* 700 F.3d 944, 956 (7th Cir. 2012) (affirming summary judgment and holding that vague allegations of being "harassed" and "intimidated" by supervisors did not allow jury to evaluate whether conduct is severe or pervasive, and few specific comments identified were insufficient).

Fleming can only survive summary judgment if she has facts to establish severe or pervasive sexual harassment from January-November 2015. Because Fleming does not identify the substance of the alleged sexual comments, the Court cannot judge whether any comments were sufficiently severe to create an actionable hostile work environment. Indeed, "allegations of

12

comments 'of a sexual nature' are, standing alone, too vague to support a hostile work environment claim." *EEOC v. Int'l Profit Assocs.,* 647 F. Supp. 2d 951, 983 (N.D. Ill. 2009).

Likewise, Fleming fails to identify the frequency of the comments, so there is no basis to conclude that any non-severe comments were, nonetheless, sufficiently pervasive. When faced with similarly vague allegations, the Seventh Circuit concluded that allegations that a plaintiff was subjected to harassment "on a regular basis" are insufficient. *See Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) (affirming summary judgment on hostile work environment claim and noting that, "a regular basis could be daily, weekly, monthly or even yearly" so court cannot conclude that alleged harassment was pervasive). And unlike in *Ezell,* Fleming does not even allege that she was sexually harassed "on a regular basis" from January-November 2015; she provides no information whatsoever regarding the frequency. (Dkt. No. 131-7, ¶ 6.)[4]

Fleming has now had two opportunities—once during her deposition, and a second time in her declaration—to identify all of Washington's alleged sexual harassment. The single and non-severe comment Fleming identified in her deposition, combined with the vague and conclusory statement in her declaration, are legally insufficient. Accordingly, Catholic Charities is entitled to summary judgment on Count III.

IV. **If the Court Allows Fleming's Sexual Harassment Claim (Count III) to Proceed, the Court Should Alternatively Re-Open Discovery to Allow Catholic Charities to Re-Depose Fleming Regarding Paragraph 6 of Her Declaration. (Dkt. No. 131-7.)**

Catholic Charities has presented two grounds, in sections I(A) and III above, for granting summary judgment on Fleming's harassment claim. However, should the Court consider and

---

[4] Given that Fleming alleges that she reported all of Washington's harassment to Ray Lee (Dkt. No. 131-7, ¶ 9), and Lee was terminated on July 22, 2015 (SOF ¶ 69) it is apparent that no alleged sexual harassment occurred after July 22, 2015, so there was certainly no severe or pervasive harassment after that date. Thus, there is no reason to interpret paragraph 6 of Fleming's declaration to mean that she was subjected to continuous sexual harassment with any frequency from January-November 2015, when her own declaration statements contradict such a conclusion.

13

reject those arguments, Catholic Charities requests, in the alternative, that it be permitted to depose Fleming further about her post-deposition statement that "from October 2012 to November of 2015, Dwayne Washington made sexual comments to me that interfered with my ability to do my job." (Dkt. No. 131-7, ¶ 6.)

As noted above, under extensive questioning at her deposition, Fleming identified only one sexual remark ("how did you get up in there?") during the 300-day limitations period from January-November 2015. She later stated in Paragraph 6 of her declaration that "from October 2012 to November of 2015, Dwayne Washington made sexual comments to me that interfered with my ability to do my job," (Dkt. No. 131-7, ¶ 6.) Defendants moved to strike Paragraph 6 as contradictory to her deposition testimony. The Court denied that request, on the sole grounds that, at Fleming's deposition, "after walking through nine particular incidents [of alleged harassment], Fleming testified that she could not recall any additional offensive incidents 'at that time.'" (Dkt. No. 145, p. 26.) The Court then relied solely on the same Paragraph 6 in finding that Fleming had presented sufficient evidence of severe and pervasive harassment. (Dkt. No. 145, p. 55.)

In short, if Fleming's harassment claim survives, it would only be because of the possibility that Fleming may have now remembered additional sexual comments that were made between January-November 2015 and that she did not remember "at that time" of her deposition.

"The primary purpose of the discovery rules in the Federal Rules of Civil Procedure is to avoid litigation by surprise." *Shott v. Rush Univ. Med. Ctr.,* 2015 U.S. Dist. LEXIS 1322, *16 (N.D. Ill. Jan. 7, 2015) (citing *Hickman v. Taylor,* 329 U.S. 495, 500-01 (1947)). To the extent Fleming seeks to rest her harassment claim on anything beyond the single (and legally insufficient) comment from April 2015, then it will unfairly prejudice Catholic Charities at trial by making it impossible for Catholic Charities to formulate a basic defense through investigating what these

14

newly-remembered comments were, the frequency, how severe the comments were, and whether there were other witnesses to the comments, among other basic details. Fleming either does not have a legally sufficient harassment claim, or she has prejudiced Catholic Charities by failing to share the factual details that would constitute severe or pervasive harassment from January-November 2015.

Accordingly, if Fleming is allowed to defeat summary judgment based on the vague statement in Paragraph 6 of her declaration, then, at a minimum, the Court should re-open discovery for the limited purpose of allowing Catholic Charities the opportunity to depose Fleming about her declaration and whether she has any additional factual information to support the conclusory statements in her declaration. Such additional discovery is required, not only to reduce the unfair prejudice to Defendants, but also to establish whether Fleming's timely allegations of sexual harassment are severe or pervasive.

## CONCLUSION

Catholic Charities brings this Motion reluctantly, and with knowledge that motions to reconsider are generally disfavored. Similarly, it is not the undersigned counsel's usual practice to bring motions to reconsider. However, Catholic Charities and its counsel believe this is the rare situation when reconsideration is necessary, particularly as to the arguments that the Court previously declined to address and thus would now be considering for the first time. Accordingly, Catholic Charities moves for the Court to reconsider its previous ruling and grant summary judgment on Counts I, III, and V. As to Count III only, in the alternative, should the Court deny summary judgment, Catholic Charities moves to reopen discovery for the sole purpose of deposing Fleming regarding the basis for the statements in her declaration.

| | |
|---|---|
| Dated: February 23, 2021 | Respectfully Submitted, |
| | CATHOLIC CHARITIES OF THE ARCHDIOCESE OF CHICAGO |
| | By: /s/ Neil H. Dishman<br>    One of Its Attorneys |

Neil H. Dishman
Julia Pearce Argentieri
Jackson Lewis P.C.
150 N. Michigan Avenue
Suite 2500
Chicago, Illinois 60601
(312) 787-4949
dishmann@jacksonlewis.com
julia.argentieri@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on February 23, 2021 he caused a true and correct copy of the foregoing *DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION* to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s/ Neil H. Dishman