UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTHER BROWNLEE and JOANIE FLEMING,<br><br>Plaintiffs,<br><br>vs.<br><br>CATHOLIC CHARITIES OF THE ARCHDIOCESE OF CHICAGO and DWAYNE WASHINGTON,<br><br>Defendants. | Case No. 16-cv-00665<br><br>Judge Joan B. Gottschall<br>Magistrate Judge Sidney I. Schenkier |

**PLAINTIFF JOANIE FLEMING'S MOTION FOR PARTIAL RECONSIDERATION**

NOW COMES Plaintiff Joanie Fleming, by and through her attorneys and for her Rule 59(e) Motion to Alter or Amend Order Granting Summary Judgment with respect to her sexual harassment claim against Defendants premised on the conduct of the owner of Defendant Catholic Charities of the Archdiocese of Chicago's ("Catholic Charities") third-party vendor, Vaia, and the conduct of Defendant Dwayne Washington prior to January 2015. In support of her motion, Ms. Fleming states as follows:

**INTRODUCTION**

On January 27, 2021, this Court entered an Order granting in part and denying in part Defendants' motions for summary judgment as to Plaintiff Esther Brownlee's claims and Ms. Fleming's claims. In particular, this Court granted Defendants' motion for summary judgment with respect to Ms. Fleming's sexual harassment claim against Catholic Charities premised on the

1

conduct of the owner of Vaia and the conduct of Defendant Dwayne Washington prior to January 2015. (Dkt. No. 145 at p. 51-54).

This Court's granting of Defendants' summary judgment motion on this issue was founded upon manifest errors of law and fact, meriting reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. Entry of said Order constitutes an unjust and unfair ruling, permitting Catholic Charities to evade liability and denying Ms. Fleming relief based on a technicality. *Ferguson v. Chicago Hous. Auth*., 155 F.Supp.2d 913, 916-17 (N.D. Ill. 2001); *Ortiz v. Werner Enters,, Inc*., 834 F.3d 760, 765 (7th Cir. 2016)

## STANDARD OF REVIEW

The purpose of Rule 59(e) is to allow "a party to direct the district court's attention to . . . a manifest error of law or fact," and enable the court "to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co*., 91 F.3d 872, 876 (7th Cir. 1996). A Rule 59(e) Motion serves to "correct manifest errors of law or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc*., 90 F.3d 1264, 1269 (7th Cir. 1996) (citations omitted). A motion for reconsideration is "only appropriate where the court has misunderstood a party, where a court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011).

Summary judgment is appropriate if, when viewing all facts in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Celotex Corp. v.*

2

*Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, a district court "may not weigh the evidence or engage in fact-finding but should simply determine whether there is a genuine issue for trial." *Hasan v. Foley & Lardner*, 552 F.3d 520, 527 (7th Cir. 2008).

## ARGUMENT

I. **This Court erred by dismissing Fleming's sexual harassment allegations pertaining to the harassment by a third-party vendor.**

   A. **Fleming offered competent evidence to show that she was subjected to sexual harassment by Vaia's owner within the statute of limitations period.**

In its January 27, 2021 Order, this Court dismissed Ms. Fleming's sexual harassment claim against Catholic Charities stemming from the egregious conduct of Vaia's owner. This Court relied entirely upon records Catholic Charities produced purportedly reflecting "all work performed by Vaia on Mobile Outreach vehicles." (Dkt. No. 79-7, at ¶ 4; Dkt. No. 145, at p. 49). In its Motion for Summary Judgment, Catholic Charities relied on a sworn statement from Cathy Whinna, its Director of Facilities Services and Emergency Response, to support its claim that as of November 2015 (when Ms. Fleming filed her Charge of Discrimination with the Equal Employment Opportunity Commission), Catholic Charities had not instructed Ms. Fleming to go to Vaia for over sixteen months. (Dkt No. 79-7, at ¶ 4)(Dkt No. 132 at p.3).

In her response, Ms. Fleming relied upon her sworn deposition testimony and affidavit, where she testified that she was sent to Vaia approximately two to three times per week. (Dkt. No. 129 at p. 9) In fact, Ms. Fleming noted that the constant sexual harassment she endured from Vaia's owner was the primary reason she actively sought a transfer to the administrative assistant role. (Dkt. No 131, ¶ 47; Fleming Dep. 25:9-25) During her deposition, Ms. Fleming stressed that she was desperately seeking a transfer so she would not have to continue to suffer from this harassment. *Id*. In fact, when Ms. Fleming reviewed and signed the job description for her new

3

role as an administrative assistant, she told her supervisor, Ray Lee, "[Y]ou can no longer send me to that vendor anymore. I actually said to Vaia." (Dkt. No 131, ¶ 47; Fleming Dep. 25:9-25) The fact that the harassment from the owner of Vaia was the primary motivating factor for Ms. Fleming to seek the administrative assistant role reflects that she was currently enduring the sexual harassment, not that she had been separated from the owner for more than one year as Catholic Charities avers. Here, the Court examined two conflicting statements: Ms. Whinna's assertion that the records attached to her affidavit were complete and Ms. Fleming's assertion that she was sent to Vaia approximately two to three times per week. By accepting at face value Ms. Whinna's claims that the records attached to her affidavit were complete, this Court made an improper credibility assessment. Binding precedent is clear that credibility assessments are within the sole purview of a jury. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.")

In addition, this Court made an inference in favor of the moving party, Catholic Charities, which violates precedent that requires all reasonable inferences to be drawn in favor of the non-moving party. *Noble v. Sheahan*, 132 F.Supp.2d 626, 633 (N.D. Ill. 2001)("In ruling on a motion for summary judgment, we must ascertain whether sufficient evidence exists to support a verdict in the non-movant's favor; weighing evidence and drawing reasonable inferences are jury functions, not those of the judge deciding a motion for summary judgment."); *see also*, *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017). In its Order, this Court accepted Catholic Charities' claims that the Vaia records were complete. The absence of business records should not be used to support Catholic Charities. Seventh Circuit precedent is clear that different forms of evidence should not be treated differently at summary judgment; rather, "[r]elevant

evidence must be considered and irrelevant evidence disregarded." *Ortiz,* 834 F.3d at 765 ("Evidence is evidence").

### B. A jury should assess the credibility of Joanie Fleming and Cathy Whinna.

In its reply brief, Catholic Charities cast doubt on Ms. Fleming's testimony that she was sent to Vaia two to three times per week by claiming that it is difficult to believe that Catholic Charities' ten vans would have required such frequent repairs and maintenance. (Dkt. 132 at p. 4)("Catholic Charities had only 10 Mobile Outreach vehicles in its fleet during this period.") However, it is perfectly sensical for Catholic Charities to require frequent repairs and maintenance for its vans.

The Mobile Outreach program is a 24/7 operation in which its Mobile Outreach workers travel throughout the Chicagoland area to deliver meals to homeless or at-risk individuals or to transport these individuals to shelters or hospitals throughout the Chicagoland area. (Dkt. No. 130, ¶¶ 1-2, 7-9). Catholic Charities provides its Mobile Outreach workers with the vehicles to use to carry out their work. (Dkt. No. 130, ¶¶ 7, 59). The Mobile Outreach Program consists of three shifts so that it can operate twenty-four hours per day. (Dkt. No. 130, ¶ 7). Accordingly, the Mobile Outreach vans are being used almost constantly. Thus, it makes sense that these vehicles would sustain considerable wear and tear.

In addition, the Mobile Outreach workers drive these vehicles on their assigned routes throughout Chicagoland, whose streets are often riddled with potholes due to the city's harsh winters. As such, Catholic Charities' claim that only one of its vans needed repairs only once throughout *an entire sixteen-month period* is the truly incredulous allegation.

Moreover, witnesses provided deposition testimony that Vaia was the only third-party vendor Catholic Charities used to perform maintenance and repairs on its vehicles. During his

deposition, former Mobile Outreach Worker Robert Ware testified that whenever the outreach workers informed the supervisors that their vans needed repairs or maintenance, the supervisors would "tell us to take it to Vaia. They'd call Vaia and say a van is coming, and we'd take the van there." (Dkt. No. 130, ¶ 59).

### C. The cases this Court relied upon in its Order support Ms. Fleming.

Moreover, the cases this Court cited to support its holding actually support Ms. Fleming. For example, in *Hicks v. Irvin*, the Defendant claimed in its motion for summary judgment that it logged and tracked inmate grievances in its computer database. 06 C 645, 2010 U.S. Dist. LEXIS 68262, at *9 (N.D. Ill. July 8, 2010). Defendant argued that Plaintiff Hicks' prison civil rights lawsuit was not viable because Mr. Hicks did not file internal grievances for the claims at issue. *Id*. at *10. Defendant submitted a sworn affidavit from its attorney-advisor stating that he reviewed the available records and did not find grievance forms from Mr. Hicks. *Id*. However, Mr. Hicks submitted a sworn affidavit with his response brief attesting that he did, in fact, submit the required grievance forms. *Id*. at *11. The court refused to accept Defendant's records at face value and stated: "The absence of a business record is evidence that something did not occur (Fed. R. Evid. 803(7)) – but, as noted above, Hick's declaration that he did submit the required forms is evidence, too. The court is required to look at the evidence in the light most favorable to the non-movant at summary judgment." *Id*. The *Hicks* court's analysis is particularly apt here. Ms. Fleming's sworn deposition testimony and affidavit contradict Ms. Whinna's contention that the Vaia records attached to her affidavit are complete. At the very least, these conflicting sworn statements create a credibility issue for the jury to consider.

This Court also relied on *Turner v. The Saloon, Ltd*., 595 F.3d 679, 691 (7th Cir. 2010) to support its holding. In *Turner*, the plaintiff brought wage claims under the Fair Labor Standards

6

Act and vaguely recalled working on "several Sundays" yet did not receive overtime pay. *Turner*, 595 F.3d at 690. The Court held that Mr. Turner's claims were "flimsy in the extreme" and that he was unable to do more than raise some metaphysical doubt as to the material facts in the face of Defendant's proffered records. *Id*. at 691. Here, Ms. Fleming's claims are more substantial, and she offered more than vague recollections of "several" instances of being sent to Vaia. Rather, in her deposition and affidavit, she specifically recalled being sent to Vaia quite frequently and said she went to Vaia approximately two to three times per week. (Dkt. No. 129 at p. 9) Courts in this district have held that when instances of harassment occur on an ongoing basis that "a plaintiff need not date stamp every incident" with precision. *Ferguson*, 155 F.Supp.2d at 916-17. This is particularly appropriate in Ms. Fleming's case where she was required to go to Vaia several times per week.

**II.    This Court erred by dismissing Ms. Fleming's sexual harassment claim pertaining to conduct by Defendant Dwayne Washington prior to January 2015.**

In her response to Defendants' motion for summary judgment, Ms. Fleming relied on *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) to rebut Defendants' argument that her sexual harassment claims relating to harassment by Defendant Dwayne Washington are untimely. (Dkt. No. 129, at p. 7) The *Adams* decision is appropriate to Ms. Fleming's argument as it distinguished discrete acts from hostile work environment claims (such as Ms. Fleming's). *Adams*, 742 F.3d at 730. In *Adams*, the plaintiffs challenged the lower court's partial dismissal of their disparate-treatment claims relating to promotion decisions that occurred in 2002, 2006, and 2007, when they filed their charges of discrimination in 2008 and 2009. *Id*. at 725, 729. The Seventh Circuit, relying on the case *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), distinguished discrete acts (such as termination, failure to promote, denial of transfer or refusal to hire) from hostile work environment claims. *Id*. at 730. The Court reasoned that

7

"'[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.'" *Adams,* 742 F.3d at 730, citing *Morgan*, 536 U.S. at 115.

Accordingly, "a hostile work environment charge is timely as long as 'any act falls within the statutory time period,' even if the charge encompasses events occurring prior to the statutory time period.'" *Id*., citing *Morgan*, 536 U.S. at 120. Similarly, here, Ms. Fleming's allegations at issue did not involve discrete acts, such as a failure to promote. Rather, Ms. Fleming alleges that she was subjected to a series of inappropriate acts by Defendant Washington which escalated in severity and created a hostile work environment. (Dkt. No. 129, at p. 7).

This Court's reliance on the caselaw Defendants proffered on this issue is misplaced as this Court should have given more weight to the *Adams* decision, which is binding precedent. *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572(7th Cir. 1987)(A single district court decision has little precedential effect and "is not binding on the circuit, or even on other district judges in the same district."); *see, also Colby v. J.C. Penney Co*., 811 F.2d 1119, 1124 (7th Cir. 1987). Furthermore, the Seventh Circuit decision this Court did rely upon is distinguishable from Ms. Fleming's case. In the case *Savory v. Lyons*, 469 F.3d 667, 669 (7th Cir. 2006), the plaintiff claimed that Defendants violated his rights by denying him access to evidence. The Court specifically noted that the continuing violation doctrine did not apply because the denial of access was a discrete act. *Id*. at 673. Since the conduct Plaintiff relied upon to support his claim consisted of discrete acts, rather that hostile work environment claims, which the *Morgan* Court distinguished from discrete acts, the Court held that the continuing violation doctrine did not apply. *Id*.

Similarly, this Court referenced Defendants' reliance on *Barrett v. Ill. Dep't of Corr*., 803 F.3d 893, 898-99 (7th Cir. 2015). However, in Barrett, the Seventh Circuit specifically noted the

8

distinction between hostile work environment claims and discrete acts and the Court noted that Barrett's claim was "not analogous to a claim for a hostile work environment." *Barrett,* 803 F.3d at 898-99. The other case that this Court relied upon is a district court opinion that pre-dates and contradicts *Adams*. *See, e.g., Gracia v. Sigmatron Int'l, Inc*., 11 C 7604, 2013 U.S. Dist. LEXIS 153399, at \*18 (N.D. Ill. Oct. 24, 2013). Accordingly, this Court erred by relying upon the *Savory* and *Gracia* cases rather than *Adams*.

## CONCLUSION

WHEREFORE, Plaintiff Joanie Fleming respectfully requests that this Honorable Court reconsider its grant of summary judgment to Defendants as to Ms. Fleming's sexual harassment allegations relating to Vaia's owner's conduct and Defendant Washington's conduct prior to 2015, deny summary judgment to Defendants, and set this matter for trial, and award any alternative relief appropriate in this matter.

                                      Respectfully submitted,
                                      JOANIE FLEMING,

                                      By:    /s/ Renee C. Fell
                                                Attorney for Plaintiffs

Dated: February 24, 2021

Uche O. Asonye – 6209522
Renee C. Fell - 6312785
Asonye & Associates
100 North LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have on this 24th Day of February, 2021, served a true and accurate copy of the foregoing *Motion for Reconsideration* via the CM/ECF electronic filing system to the following:

Neil H. Dishman
Julia Pearce Argentieri
Jackson Lewis P.C.
150 N. Michigan Avenue Suite 2500
Chicago, Illinois 60601

                                                                Respectfully Submitted,
                                                                 Joanie Fleming,

                                                                 /s/ Renee C. Fell
                                                                One of Plaintiff's Attorneys

Uche O. Asonye - 6209522
Renee C. Fell - 6312785
Asonye & Associates
100 N. LaSalle Street, Suite 2115
Chicago, Illinois 60602
(312) 795-9110